OPINION
This appeal emanates from the conviction of defendant-appellant, Mark A. Zembower, for one count of felonious assault, R.C. 2903.11, and one count of discharging a weapon while intoxicated, R.C. 2923.15,[1] in the Lake County Court of Common Pleas.
The charges for which appellant was convicted arose from an incident involving Angela Arnett, his live-in girlfriend and the mother of his child.[2] At approximately 2:30 a.m. on October 15, 1994, officers from the Lake County Sheriff's Department were summoned to Fremont Avenue in Painesville Township on a complaint of "shots fired." When Sergeant Ron Walters and Deputy Todd MenMuir arrived at 900 Fremont Avenue, they noticed appellant and another male, Jason Layfield, sitting on a blanket on the front stoop of the residence. To appellant's side, leaning against the house, was a shotgun; a number of spent shotgun shells were scattered around the area of the front stoop. Sergeant Walters, after securing the loaded shotgun[3], asked appellant and Mr. Layfield about the report of shots fired. Appellant admitted to firing the shotgun, stating he "was just drunk and being stupid." The officers noticed that appellant did appear to be intoxicated; he had bloodshot eyes, he "reeked" of alcohol, and his speech was slurred. As a result, appellant was placed under arrest for discharging a weapon while under a disability — intoxication — and was transported by another unit to the Lake County jail.
When the officers were collecting evidence and taking photographs, they noticed that a telephone pole across the street appeared to have some damage from shotgun fire. While investigating that area, Deputy MenMuir heard a "whimpering sound" from the vacant, wooded lot in which the telephone pole was located. He looked into the briar- covered brush and discovered Angela Arnett lying in the fetal position on the ground, with her hands over her head. She was shaking and crying and appeared to be seriously injured. Her face was dirty and bloody, her clothes were torn, and she was not wearing shoes. When Deputy MenMuir and Sergeant Walters tried to approach her, she was very fearful; she seemed not to believe they were police officers who were there to help her. According to Deputy MenMuir, it "took her awhile to realize that [he] was, in fact, a * * * police officer."
The two officers assisted Ms. Arnett to their cruiser until an ambulance could be summoned. She complained of neck and back injuries and was covered in cuts and bruises. They asked Ms. Arnett "what happened," and she responded that her boyfriend, Mark Zembower, was the one who was responsible for her injuries. After being transported to Lake East Hospital, Ms. Arnett again told her treating physician, Dr. Wanda Ramsey, that appellant had beaten her. Dr. Ramsey also stated that, when Ms. Arnett was relating the events of that evening to her, she was extremely upset.
Ms. Arnett suffered a partially collapsed lung, a bruised kidney and multiple flesh bruises and lacerations, some requiring stitches. The lab results also revealed Ms. Arnett was in the early stages of pregnancy. She was admitted into the hospital where she remained for three days. After she was discharged from the hospital, she returned home with appellant. Ms. Arnett then altered her account of the morning of October 15, 1994, and stated that on the previous night she was beaten by a group of women at a local tavern, the Vagabond. It was alleged that appellant instructed Ms. Arnett and some of his acquaintances to tell the police, if asked, that Ms. Arnett was involved in a fight at the Vagabond. When questioned by police, appellant admitted he slapped Ms. Arnett that evening.
The grand jury returned a true bill against appellant for one count of felonious assault and one count of discharging a weapon while intoxicated. He failed to appear for his initial trial, but did appear when the trial was rescheduled. Ms. Arnett was subpoenaed five times yet failed to appear to testify. The jury convicted appellant on both charges based on the testimony of Sergeant Walters, Deputy MenMuir, Dr. Ramsey and a former friend of appellant's, Randy Harris, who testified that appellant instructed him and others to tell the police that Ms. Arnett was beaten at the Vagabond. Appellant presented two witnesses who testified that Ms. Arnett had been involved in a fight at the Vagabond on October 14, 1994. Despite this testimony, the jury found appellant guilty on both counts. He was sentenced to an indefinite term of five to fifteen years in prison on the felonious assault charge and six months on the firearm charge; the court merged the two counts for sentencing purposes and gave appellant credit for time served.
On appeal from his conviction for felonious assault, appellant raises the following assignments of error:
 "[1.] The trial court violated defendant-appellant's Sixth Amendment right to a face to face confrontation of his accuser by permitting hearsay testimony of the alleged victim despite no predicate showing of unavailability.
 "[2.] The trial court abused its discretion in allowing the state to pose leading questions to its own witness in violation of Evidence Rule 611(C).
 "[3.] The trial court erred by denying defendant's motion for judgment of acquittal as the evidence presented by the state was insufficient to sustain a conviction of the offense of felonious assault.
 "[4.] The verdict of the jury was against the manifest weight of the evidence and must be reversed."
By his first assignment of error, appellant challenges the testimony of the two police officers and Dr. Ramsey regarding certain statements Ms. Arnett made to them about her injuries. Appellant contends the trial court's admission of these statements before requiring the state to show Ms. Arnett's unavailability violated his Sixth Amendment right to confrontation. He does not challenge nor do we address whether the admission of this testimony would violate his confrontation rights under Ohio's counterpart to the Sixth Amendment, Section 10, Article I of the Ohio Constitution.
The Supreme Court of the United States first addressed the "relationship between the Confrontation Clause [of the Sixth Amendment] and the hearsay rule with its many exceptions" in Ohiov. Roberts (1980), 448 U.S. 56, where it established a two-part test to determine whether the admission of hearsay testimony violates a criminal defendant's right to confrontation under the Sixth Amendment.
 "* * * [W]hen a hearsay declarant is not present for cross- examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate `indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." Id.
Thus, to protect a criminal defendant's right to confrontation, the Roberts Court held the state must show that (1) the out-of-court declarant is unavailable and (2) the out-of-court statement bears some "indicia of reliability" either by falling into a "firmly rooted" hearsay exception or, if not, by showing the trustworthiness of the statement. Id.
This test remained intact and was followed by many lower courts[4] until 1986 when the Court revisited the issue inUnited States v. Inadi (1986), 475 U.S. 387. In Inadi, the Court removed the requirement that the state show the unavailability of the out-of- court declarant in a majority of cases. The Court noted that Roberts dealt particularly with the admissibility of prior testimony from a judicial proceeding in a subsequent criminal trial and stated that the state need only show the declarant's unavailability in cases dealing with prior testimony.Id. at 393. Because Inadi dealt with the out-of-court statement, rather than prior testimony, of a co-conspirator, the Court concluded that, so long as the out-of-court statement satisfied the Rules of Evidence, there would be no additional requirement that the state show unavailability under the Sixth Amendment.
This amended rule was followed in Idaho v. Wright (1990),497 U.S. 805, and again in White v. Illinois (1992), 502 U.S. 346. Particularly in White, the Court was faced with out-of-court statements that fell within the "spontaneous declaration"[5]
and "medical diagnosis and treatment" exceptions to the hearsay rule. It found that these were "firmly rooted" hearsay exceptions that did not require a showing of unavailability either by the Rules of Evidence or the Confrontation Clause and concluded the admission of these hearsay statements did not violate the White
defendant's right to confrontation under the Sixth Amendment.White, 502 U.S. at 357.
In the present case, appellant contests the admissibility of the testimony of Sergeant Walters, Deputy MenMuir, and Dr. Ramsey that Ms. Arnett named appellant as her assailant. The trial court admitted the police officers' testimony under the "excited utterance" exception to the hearsay rule and admitted Dr. Ramsey's testimony under the "medical diagnosis and treatment" exception. Appellant claims the state was required to prove Ms. Arnett was unavailable before her out-of-court statements were properly admitted. We disagree on the authority of White. Because the Supreme Court in White held that these exceptions were firmly rooted hearsay exceptions, and because the Rules of Evidence and the Confrontation Clause do not require a showing of unavailability, the admission of these kinds of statements without a prior showing of unavailability did not violate appellant's Sixth Amendment rights so long as they did, in fact, fall within the exception.
First, we address whether the police officers' testimony fell within the excited utterance exception. Appellant challenges the trial court's ruling on this issue because Sergeant Walters and Deputy MenMuir asked Ms. Arnett "what happened" before she made the out-of-court statement at issue.
An excited utterance is defined by Evid.R. 803(2) as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The rationale behind this exception is that the delcarant is in such an emotional state, she does not reflect on the events but merely relates them almost as by reflex. Relating to appellant's contention, the Supreme Court of Ohio held in State v. Wallace (1988), 37 Ohio St.3d 87, paragraph two of the syllabus, "[t]he admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." The dispositive inquiry is whether the out-of-court declarant was still under the stress of the event giving rise to the statement. Id. at 92.
Both Sergeant Walters and Deputy MenMuir testified that Ms. Arnett was visibly upset when they found her lying in the fetal position in the brush; she was shaking "almost to the point of uncontrollable," crying, and seriously injured. When they first approached her, she was unable to recognize them as police officers, although they readily identified themselves. She was clearly in a state of extreme emotional upset. Moreover, the officers' question "what happened" was in no way coercive or leading. It was merely an impetus to her telling them how they could help her. Nor did that simple question destroy the domination the stress had over her reflective abilities. SeeState v. McLindon (Apr. 15, 1992), Hamilton App. No. C-850868, unreported, 1992 Ohio App. LEXIS 1955. The trial court reached the conclusion correctly and properly admitted this testimony.[6]
Second, Dr. Ramsey testified that Ms. Arnett told her appellant beat her, causing her injuries. The court admitted this testimony under the "medical diagnosis and treatment" exception to the hearsay rule. Evid.R. 803(4). This was error. This court stated in State v. Conway (June 20, 1997), Lake App. Nos. 95-L-040 and 95-L-043, unreported, that the name of the perpetrator of domestic violence was not reasonably pertinent to medical diagnosis and treatment when the victim was an adult. This holding has equal applicability here. Certainly, the doctor could have relayed her statements concerning the fact that she was beaten.
However, the trial court's ruling can be affirmed on other grounds. Dr. Ramsey testified that Ms. Arnett was still "extremely upset" at the hospital, almost two hours later, when she gave her statement. Also, Sergeant Walters and Deputy MenMuir confirmed Dr. Ramsey's analysis of Ms. Arnett's state of emotional upset at the hospital. Thus, Dr. Ramsey's testimony that Ms. Arnett named appellant as the perpetrator of her assault was admissible under the excited utterance exception to the hearsay rule. We also note that Dr. Ramsey's testimony regarding Ms. Arnett's identification of appellant was merely cumulative to Sergeant Walters' and Deputy MenMuir's testimony regarding identification.
Appellants' first assignment of error is without merit.
Appellant next challenges the trial court's acquiescence in permitting the state to ask leading questions of its own witness. The state subpoenaed Randy Harris, a former friend of appellant's, with whom he had recently had a falling-out. Harris testified that he heard appellant instruct Ms. Arnett to tell the police nothing about the cause of her injuries. Appellant challenges only one question posed to Mr. Harris as leading, to his detriment: "Did he [appellant] tell her [Ms. Arnett] that she was to testify to anything?" To this, Mr. Harris responded, "If she testified — he said if she testified not to say anything, or if she was not here there would be no case." This interaction followed a question by the state regarding whether appellant said anything to Ms. Arnett about her testimony "that day." To which Mr. Harris responded, "[n]ot that I can remember * * *." Appellant contends the state impermissibly lead this already "extremely cooperative" witness after he clearly testified he did not remember.
Evid.R. 611(C) states that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." Whether to permit leading questions during a direct examination is left to the sound discretion of the court. Ramage v. Central Ohio Emergency Serv.,Inc. (1992), 64 Ohio St.3d 97, 111. In this case, we find no abuse of discretion by the trial court's allowance of this question. Its nature may be leading in light of the context although it appears rather that it was an attempt to refresh Mr. Harris' recollection, but the witness did not merely give a "yes" or "no" answer. He gave a full statement of what appellant instructed Ms. Arnett to do. It is also worthy of note that, although Mr. Harris was a witness called by the state, he was at one time a friend of appellant and was not, after careful review of the transcript, "extremely cooperative" with the state. The trial court was well within its discretion to allow this question to stand especially in light of the other evidence tending to incriminate appellant.
The assignment of error is without merit.
For his third assignment of error, appellant contends the court erred in overruling his motion for a judgment of acquittal under Crim.R. 29(A). The test for determining whether a motion for acquittal is properly denied was set forth in State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus:
 "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
Thus, a trial court is only permitted to grant a defendant's Crim.R. 29(A) motion where reasonable minds could not fail to find reasonable doubt; otherwise, the court must deny the motion.State v. Apanovitch (1987), 33 Ohio St.3d 19, 23.
R.C. 2903.11 provides that a conviction for felonious assault requires the state to prove the defendant knowingly caused serious physical harm to the victim. A person acts knowingly when, regardless of his purpose, he is aware that his conduct will probably cause a certain result. R.C. 2901.22(B). Serious physical harm includes inter alia "any physical harm which carries a substantial risk of death" or "any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain." R.C. 2901.01(E)(2) and (5).
Appellant claims the state failed to present sufficient evidence to show that he perpetrated this crime or that, if he did, he acted knowingly. Again, the state presented the testimony of Sergeant Walters, Deputy MenMuir and Dr. Ramsey that Ms. Arnett confirmed appellant beat her and was responsible for her substantial injuries. This testimony was sufficient to meet the state's initial burden of showing appellant was the perpetrator and that he acted knowingly, without regard to his purpose, in causing her serious physical injury. The jury could reasonably infer the act of beating was done with an awareness that this conduct would probably cause serious physical injury. Finally, appellant did admit to slapping Ms. Arnett that evening. Thus, the trial court correctly overruled appellant's motion for an acquittal both at the close of the state's case and at the end of all evidence.
For his final assignment of error, appellant challenges his conviction as being against the manifest weight of the evidence. A "manifest weight" challenge requires a reviewing court to examine all the evidence presented to the jury, resolve all factual inconsistencies, consider the credibility of the witnesses where possible, and determine whether the jury clearly lost its way and created a manifest miscarriage of justice in finding appellant guilty. State v. Thompkins (1997), 78 Ohio St.3d 380,388; State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11.
The state's evidence was that of Sergeant Walters, Deputy MenMuir, and Dr. Ramsey, who all testified that Ms. Arnett named appellant as her assailant and that her injuries were serious. The only evidence appellant offered was of two witnesses who claimed that Ms. Arnett was involved in a fight with four or five other women on the night of October 14, 1994. These witnesses, on cross-examination, admitted that Ms. Arnett was able to leave the Vagabond after that fight without any assistance. Moreover, Mr. Harris also testified that appellant instructed Ms. Arnett and other friends to tell police nothing or, if they did, tell them that Ms. Arnett was in a fight at the Vagabond that evening.
This case boils down to which witnesses the jury believed, the state's or appellant's. Clearly, the jury believed the state's version of the events of October 15, 1994. Because the jury is in a superior position, under these circumstances, to judge the credibility of the witnesses, State v. Mills (1992), 62 Ohio St.3d 357,368, we cannot find from our review of the record and transcript that it lost its way and created a manifest miscarriage of justice in finding appellant guilty of felonious assault.
The assignment of error is overruled.
The judgment of the Lake County Court of Common Pleas entered on the jury's guilty verdict is affirmed.
ROBERT A. NADER, JUDGE.
CHRISTLEY, P.J., and O'NEILL, J., concur.
[1] Appellant does not challenge his conviction and sentence on the R.C. 2923.15 charge.
[2] Appellant and Ms. Arnett now have three children.
[3] While securing the shotgun, Sergeant Walters noticed there was one live round in the chamber. He ejected the round and placed it in his pocket until he could place it in an evidence bag.
[4] E.g., State v. Gilliam (1994),70 Ohio St.3d 17 and State v. Keairns (1984), 9 Ohio St.3d 228.
[5] This is the federal counterpart to Ohio's "excited utterance" exception.
[6] We also find worthy of note the fact that appellant did not object to Deputy MenMuir's testimony about Ms. Arnett's statement, although he did object when Sergeant Walters testified.