[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, George Weaver, Jr., appeals the judgment of the Lake County Court of Common Pleas which denied his petition for postconviction relief without an evidentiary hearing. Appellee, the State of Ohio, has filed an answer brief. For the reasons that follow, we affirm the judgment of the trial court.
In October 1991 and January 1992, appellant was indicted as both an accomplice and a principal on one count of aggravated murder in violation of R.C. 2903.01 and 2923.03; one count of grand theft auto in violation of R.C. 2913.02 and 2923.03; and one count of aggravated robbery in violation of R.C. 2911.01 and2923.03. All three counts contained a firearm specification, and the third count contained a physical harm specification. The matter proceeded to a jury trial, and the jury found appellant guilty of all three counts and all specifications in February 1992.
Appellant appealed his conviction and sentence to this court, and we reversed and remanded the action for a new trial. State v.Weaver (Mar. 26, 1993), Lake App. No. 92-L-046, unreported, 1993 Ohio App. LEXIS 1756 ("Weaver I"). Appellant had a second jury trial in December 1993 on the same charges. The second jury found appellant guilty of all three counts and all specifications.
Appellant took an appeal of this second conviction and sentence to this court. On this appeal, appellant was represented by the same counsel that represented him at his second trial in December 1993. This court upheld appellant's convictions, but we reversed the trial court's sentence and remanded the matter for re-sentencing. State v. Weaver (June 28, 1996), Lake App. No. 94-L-008, unreported, 1996 Ohio App. LEXIS 3005 ("Weaver II").
Appellant subsequently moved this court to reconsider our decision in Weaver II, which we denied. Appellant also filed an unsuccessful appeal with the Supreme Court of Ohio. State v.Weaver (1997), 78 Ohio St.3d 1492. Finally, appellant moved this court to reopen the appeal on the ground of ineffective assistance of appellate counsel. We denied this request.
On September 20, 1996, appellant timely filed the instant petition for postconviction relief in the trial court, alleging that he was deprived of the effective assistance of trial counsel during his second trial. The trial court denied appellant's petition without an evidentiary hearing on July 15, 1997. The trial court explained its decision in a fifteen-page judgment entry containing the requisite findings of fact and conclusions of law. The factual issues contained therein will be addressed further in this opinion.
Appellant perfected a timely appeal to this court, asserting one assignment of error:
 "The Trial Court Erred When It Dismissed Mr. Weaver's Petition For Post Conviction Relief, Thus Violating Mr. Weaver's Rights Under the Sixth and Fourteenth Amendments of the United States Constitution, Article I, Section 10, of the Ohio Constitution, and Ohio Revised Code Section 2953.21
(Entry Denying Defendant's Petition For Post Conviction Relief, July 15, 1997)."
Initially, we note that the trial court correctly denied appellee's request to dismiss the petition on the basis of resjudicata. We agree with appellant that this would not have been a proper basis to dismiss the petition because appellant could not have raised the instant issues on direct appeal. See State v.Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus;State v. Cole (1982), 2 Ohio St.3d 112, syllabus. Specifically, an exception arises when a petitioner is represented by the same counsel during his trial and his appeal, as in the case subjudice. The exception arises because counsel cannot be expected to argue his own incompetence on appeal. Cole at 663, n. 1, citing State v. Carter (1973), 36 Ohio Misc. 170.
In appellant's sole assignment of error, appellant argues that the trial court erred by overruling his petition for postconviction relief without first holding an evidentiary hearing. R.C. 2953.21(C) and (E) govern the grant or denial of an evidentiary hearing on a petition for postconviction relief in Ohio. R.C. 2953.21(C) states:
 "* * * Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript."
R.C. 2953.21(E) further provides: "[u]nless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues * * *."
In a decision of this court in State v. Allen (Sept. 23, 1994), Lake App. No. 93-L-123, unreported, we held that a hearing is not automatically required whenever a petition for postconviction relief is filed. The test is whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records in the case. State v. Strutton (1988), 62 Ohio App.3d 248.
When a petition for postconviction relief asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness. State v. Jackson
(1980), 64 Ohio St.2d 107, syllabus.
The holding in Jackson is based, of course, on the two-prong test for ineffective assistance of counsel first set forth by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668. The Strickland test has been followed and applied by the Supreme Court of Ohio and this court. State v. Post
(1987), 32 Ohio St.3d 380; State v. Bradley (1989), 42 Ohio St.3d 136;State v. DiMeolo (Sept. 30, 1992), Ashtabula App. No. 91-A-1680, unreported, 1992 Ohio App. LEXIS 5045.
Under the first prong of the test, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland at 687. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id.
Regarding the second prong of the test, the following excerpt from the Strickland decision should be considered by courts grappling with the determination of whether a criminal defendant has been prejudiced by counsel's ineffectiveness:
 "`* * * A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors of the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.'" Bradley at 142-143, quoting Strickland at 695-696.[1]
In his petition, appellant alleged that he was deprived of the effective assistance of counsel because trial counsel failed to admit certain evidence at trial. According to appellant, this evidence showed that appellant was not the person who actually shot the murder victim in this case, Terrell Lynn ("Lynn"), and that appellant's juvenile co-defendant, Roderick Parks ("Parks"), was the person who shot Lynn. Appellant also asserted that Parks provided the only evidence against appellant regarding the murder, thus rendering the omitted evidence which would contradict Parks' version of events critical to appellant's defense.
In support of his petition, appellant attached two affidavits from his trial counsel which indicated that they failed to consider possible viable methods for introducing the subject evidence at trial. They also indicated that their failure to introduce this evidence was due to an oversight on their parts, rather than to an intentional trial strategy.
Briefly, as noted more fully in Weaver II, the following facts are pertinent to our analysis in this case and should, thus, be set forth at the outset. Appellant was one of three persons allegedly involved in the murder and robbery of the victim, Lynn. One of the co-defendants was appellant's cousin, Okema Dykes ("Dykes"). The other co-defendant, as previously mentioned, was Parks.
At trial, there were essentially three competing theories of appellant's involvement in the alleged crimes. The first theory was that appellant was the "triggerman" who actually shot Lynn and then robbed him. This theory was advanced by the state and was supported by Parks' testimony. According to Parks, appellant and Dykes participated with Parks in planning the robbery of the victim and agreed to follow Parks and the victim to the site of a staged drug deal. There, Dykes pulled the victim out of the car; appellant suddenly shot the victim with appellant's own gun; and, appellant and Dykes robbed the victim and dragged the victim's body to an adjacent field. The three then decided to drive the victim's car to Detroit, Michigan, where appellant was arrested.
The second, opposing theory was advanced by the defense. This theory exonerated appellant on all charges and was supported by appellant's testimony at trial.[2] According to appellant, he was not present at the site of the shooting and had no knowledge of any plan to rob or to kill the victim. Appellant claimed that he only found out about the murder when Parks drove up in the victim's car and announced to appellant and Dykes that he (Parks) just shot Lynn, the victim. It was only then that appellant and Dykes got into the victim's car with Parks and drove back to the scene of the murder. There, Parks and Dykes carried the body to the adjacent field. Appellant then decided to go with Parks and Dykes to Detroit because he had already been planning to go there.
The third and final theory was that appellant acted as an aider and abettor in the commission of the alleged offenses, even if it was true that he was not present during the shooting, and, thus, was not the triggerman. This complicity theory was advanced by the state as a sort of default position in the event that the jury believed appellant was not the triggerman. As we noted in WeaverII, this theory was supported by the evidence presented at trial. As a result, we upheld the trial court's decision to give a complicity instruction in Weaver II, noting:
 "In arguing that the evidence did not support the complicity instruction, appellant essentially asserts that if the jury rejected Parks' testimony as to whether appellant had shot Lynn, there was no evidence upon which the jury could find that he played any role in the murder or theft offenses. In reviewing the entire record, though, we conclude that even if the jury did not find that appellant had been the `triggerman,' there was still evidence upon which the jury could have found that he had played a significant role in facilitating the commission of the offenses.
 "In relation to this point, we would first note that Parks specifically testified that appellant had participated in the planning of the robbery. In addition, evidence was presented which corroborated that appellant had helped in the planning of the murder. For example, appellant admitted that he had obtained the pistol which was employed in the murder.
 "More importantly, evidence was presented establishing that, prior to the murder, appellant had been present while Parks had discussed the possibility of killing Lynn. On one of these occasions, Parks supposedly told appellant that he was ready to shoot the victim." Weaver II
at 11-12.
Turning now to the arguments set forth in appellant's petition, appellant's first argument was that counsel should have moved the court pursuant to Evid.R. 804(B)(1) to admit the prior testimony of Frank Hicks ("Hicks") when Hicks was unavailable to testify at appellant's trial. According to appellant's petition, Hicks gave this prior testimony during the trial of appellant's co-defendant, Dykes. A copy of the testimony was attached to appellant's petition. In his testimony, Hicks indicated that he spoke with Parks in Detroit shortly after the murder, in appellant's and Dykes' presence. At the time, Hicks was living with Dykes' sister and had become acquainted with appellant and Dykes through this relationship.
According to Hicks, he initiated the conversation with Parks after learning of the incident from Dykes. Hicks testified that Dykes was "shaken up" about the murder and that Dykes told him that Parks "did a murder" and then picked up appellant and Dykes and brought them to Detroit. Hicks thereafter went in search of Parks to question him about the incident.
After appellant introduced Hicks to Parks, Parks recounted to Hicks a version of events which corroborated appellant's testimony that appellant was not present during the shooting, and, thus, was not the triggerman. Specifically, Parks told Hicks that he (Parks) was alone in the car with the victim when the two arrived at the site of the staged drug deal. After Parks got out of the car and pretended to seek out the non-existent buyer, Parks came back to the car and shot the victim. Parks thereafter went to pick up appellant and Dykes and brought them back to the scene of the murder. When they arrived, Parks "made" appellant help him (Parks) move the body to the field.
Although both appellant and Dykes were present during this conversation, Hicks testified that they did not comment on Parks' account of the events. Hicks did not testify as to any further details of appellant's alleged involvement in the offenses.
The trial court concluded that even though Hicks' prior testimony would have been admissible under the Rules of Evidence, appellant failed to demonstrate that he was prejudiced by the omission or that a reasonable probability exists that the outcome of the trial would have been different had the evidence been admitted.
We see no reason to reverse the trial court's decision. First, we agree with the trial court's conclusion that Hicks' prior testimony would have been admissible pursuant to Evid.R. 804(B)(1). This rule reads, in pertinent part:
 "(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. * * *"
In this context, a witness is "unavailable" when he or she "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under division (B)(2), (3), or (4) of this rule, the declarant's attendance or testimony) by process or other reasonable means." Evid.R. 804(A)(5).
Here, appellant's trial counsel filed a motion to secure Hicks' attendance at appellant's trial as an out-of-state witness. The trial court thereafter instituted the process of having an out-of-state subpoena served on Hicks at his last known address in Michigan. The court also made provisions for Hicks' travel expense. Nevertheless, these efforts were unsuccessful. Counsel also contacted the Detroit Public Defender's Office for assistance, but received word from the office that they were unable to locate Hicks to serve him the subpoena. These efforts would suffice to establish that Hicks was unavailable as a witness under Evid.R. 804(A)(5).
Moreover, there was no question that the state had the opportunity to cross-examine Hicks at Dykes' trial and that Hicks' prior testimony was otherwise fully developed pursuant to Evid.R. 804(B)(1).[3] Consequently, the trial court was correct in finding that the prior testimony would have come in had counsel introduced it.
Nevertheless, the trial court found to be misleading appellant's assertion that Hicks' prior testimony would have cast doubt on the only evidence against appellant on the aggravated murder charge. The trial court further noted our conclusion inWeaver II that sufficient evidence existed upon which the jury could have reasonably found that even if appellant was not present, and, thus, was not the triggerman, he aided and abetted in the commission of the murder. Again, we noted that testimony at trial established that Parks was overheard discussing, in appellant's presence, the possibility of murdering Lynn prior to the murder. It was also uncontroverted that the murder weapon belonged to appellant and that appellant had given Parks permission to carry the weapon prior to the murder.
Moreover, the trial court expressly found that Hicks' prior testimony was cumulative to the existing testimony which supported appellant's assertion at trial that Parks was the one who actually shot the victim. However, as indicated above, this did not change or conflict with the other compelling evidence which indicated that appellant aided and abetted Parks in the commission of the murder, e.g., by plotting the murder in advance with Parks and Dykes and then supplying Parks with the murder weapon. As a result, the omitted evidence cannot be said to have a pervasive effect on the entire evidentiary picture or otherwise alter the conclusion that a rational jury could have found appellant guilty beyond reasonable doubt as an aider and abettor, regardless ofwhether appellant was present and regardless of whether Parks wasactually the triggerman.
Appellant also argues that counsel should have moved the court pursuant to Evid.R. 804(B)(3) or 803(8) to admit a statement which appellant's co-defendant, Dykes, made to the police when Dykes asserted his Fifth Amendment privilege against self-incrimination and refused to testify at appellant's trial.
In short, this statement to police also corroborates appellant's version of events to some extent, specifically that Parks was the triggerman. Further, although it is not entirely clear, it would also appear from Dykes' rendition of how the shooting occurred that appellant was not present during the shooting. However, the contents of the statement were not otherwise favorable for appellant as the statement indicates that: (1) appellant was laughing and agreeing with Parks when Parks indicated to Dykes during the car ride to Detroit that Parks had to kill a person, obviously the victim; (2) the murder weapon was appellant's gun and appellant gave that gun to Parks; (3) appellant and Parks got out of the car when the three returned to the scene of the crime and searched through the victim's pockets, thereafter throwing the body in the bushes; and (4) appellant and Parks removed money from the victim and gave Dykes $150 of the stolen money.
The trial court concluded that even though Dykes' statement to the police would have been admissible under the Rules of Evidence, appellant failed to demonstrate that he was prejudiced by the omission or that a reasonable probability exists that the outcome of the trial would have been different had the evidence been admitted.
Again, we see no reason to reverse the trial court's decision. First, we find no fault with the trial court's determination that Dykes' statement to the police would be admissible under Evid.R. 804(B)(3).[4] This rule reads, in pertinent part:
 "(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
"* * *
 "(3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
Here, Dykes was unavailable within the meaning of Evid.R. 804 when he exercised his Fifth Amendment privilege against self-incrimination at appellant's trial. There was also no question that Dykes' statement to the police tended to subject him to criminal liability for his alleged involvement in the offenses.
Further, the trial court found that sufficient corroborating circumstances were present to indicate clearly that the statement was trustworthy, e.g., that Dykes gave the statement to the police while he was in custody; that the statement was given voluntarily after Dykes was read his Miranda rights; and that Dykes' statement would have been corroborated by other testimony at trial (presumably appellant's). See State v. Landrum (1990), 53 Ohio St.3d 107,113-115. See, also, State v. Gilliam (1994), 70 Ohio St.3d 17,20-21.
We concur with the trial court's decision in this regard, especially as to the third reason. In particular, we note that the defense was the party which would have been attempting to introduce Dykes' statement to the police into evidence. As such, the trial court would not have needed to concern itself with the "`particularized guarantees of trustworthiness'" required under the Confrontation Clause. See Gilliam at 21.
Turning to the second prong of the Strickland test, we concur with the trial court's conclusion that appellant failed to demonstrate that he was prejudiced by the omission of Dykes' statement to the police. As the trial court noted, it is highly questionable whether Dykes' statement would have actually benefited appellant, regardless of the fact that it indicates Parks was the triggerman. Indeed, the statement indicates that appellant was heard laughing and agreeing with Parks that the victim had to be killed; that appellant conceded that the murder weapon was his gun and that appellant gave that gun to Parks; and that appellant actively robbed the murdered victim and then threw the body in the bushes. These revelations, in fact, reinforce the theory that appellant was a willing and eager participant in the entire spectrum of offenses, even if Parks was the triggerman. This, of course, reinforces the theory that appellant was culpable as an accomplice in the alleged offenses.
In addition to the two arguments discussed above, appellant subsequently amended his petition to include a claim that he was denied the effective assistance of counsel when counsel failed to request a curative instruction following Dykes' assertion of hisFifth Amendment privilege at appellant's trial. Appellant argued that counsel should have asked the court to instruct the jury that it was not permitted to draw any prejudicial inferences from Dykes' refusal to testify. Finally, appellant alleged that the cumulative effect of these errors denied him the right to a fair trial.
Regarding the curative instruction, the trial court found no merit to appellant's assertion that he was denied the effective assistance of counsel when counsel failed to request a curative instruction following Dykes' assertion of his Fifth Amendment privilege against self-incrimination. On this point, appellant argued that without the instruction, the jury was free to infer the following: (1) since Dykes refused to discuss his involvement, Parks' testimony which implicated Dykes was accurate; and (2) appellant's account, which tended to exonerate Dykes, was inaccurate.
On this issue, the trial court noted that several other witnesses besides Parks gave testimony which would raise the inference that Dykes was preliminarily involved in the alleged criminal activity. The court further found appellant's proposed inferences to be speculative and not conclusive. Finally, the court found that there was no reasonable probability that, but for counsels' failure to request a curative instruction, the outcome of the trial would have been different, considering the totality of the evidence in the record. We concur with these conclusions.
Finally, the trial court found no merit to appellant's contention that the cumulative effects of these errors deprived appellant of a fair trial. We agree with this conclusion. As the trial court noted, appellant's trial counsel functioned very well as adversarial representatives who required the state to prove their case beyond a reasonable doubt. The record supports that finding, despite the conceded omissions. Moreover, none of the omissions altered the evidentiary picture as to appellant's guilt under a complicity theory.
In light of the foregoing analysis, appellant's sole assignment of error is without merit. The judgment of the trial court is affirmed. ___________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J.,
O'NEILL, J., concur.
[1] We note that this is the proper standard governing the interpretation of evidence under the prejudice analysis. To the extent that the trial court conducted its prejudice analysis by incorporating the standard for reviewing sufficiency as set forth in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, e.g., that the evidence must be viewed in a light most favorable to the state, the trial court erred. Nevertheless, we believe that the trial court reached the correct result, and, thus, that any error in this regard is merely harmless.
[2] However, the defense conceded that appellant would still be culpable as an accessory after the fact under this theory.
[3] Appellant also attached to his petition a copy of a statement Hicks gave to an investigator for the Ohio Public Defender's Office which was set forth as an affidavit. Appellee is correct that this affidavit would not be admissible pursuant to Evid.R. 804(B)(1) because the affidavit was not "testimony" adduced in a "proceeding" as envisioned under the rule. Nevertheless, appellant made no serious attempt to suggest that the affidavit would be admissible as the contents of the affidavit mirror the contents of Hicks' testimony at Dykes' trial. Consequently, the trial court correctly focused on this testimony and its admissibility under Evid.R. 804(B)(1).
[4] Our disposition of this issue makes it unnecessary for us to analyze whether Dykes' statement was similarly admissible under Evid.R. 803(8).