OPINIONS OF THE SUPREME COURT OF OHIO
        The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
        Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
        NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Gilliam, Appellant.
[Cite as State v. Gilliam (1994),     Ohio St.3d     .]
Criminal procedure -- Evidence -- Admission of co-defendant's
        taped statement after co-defendant becomes unavailable
        does not violate Sixth Amendment right to confront adverse
        witnesses, when.
        (No. 93-531 -- Submitted April 20, 1994 -- Decided August
3, 1994.)
        Appeal from the Court of Appeals for Lorain County, No.
92CA005331.
        On August 26, 1991, defendant-appellant, Edward Gilliam,
made a statement to the police.  Detective Mike Medders of the
Elyria Police Department testified that Gilliam admitted that
on August 21, he rode to Rite Nau Beverage in Elyria with
William Moore and Bruce Treadwell.  Appellant went inside and
ordered a bottle of wine from the employee on duty, who was
identified later as Joseph Pleban.  Pleban told appellant that
the total came to $2.01.  Appellant handed Pleban $2.00, and
while appellant was digging in his pockets for a penny,
Treadwell appeared with a shotgun and demanded money.
        Pleban testified the man who had ordered the wine did not
appear surprised when Treadwell appeared with the shotgun.
Pleban explained that he followed Treadwell's orders, and went
to the cooler to get the money bag.  As Pleban walked to the
cooler, Treadwell said, "Don't try anything funny, I'll put a
hole in your back."  Treadwell took the money from the cash
register and the money bag, and closed Pleban in the cooler.
Pleban watched through the glass windows on the side of the
cooler.  He could no longer see appellant, but he could see
Treadwell stuffing money into his pants.  As Treadwell left,
Pleban noticed that he could no longer see the shotgun.
        Appellant stated to police that he and Treadwell left
together and met Moore back at the car.  A witness, Vicki
Glover, testified that she had seen two black males laughing
and running from the direction of Rite Nau.  The men ran to a
parked car four houses down from Rite Nau, in which car a third
man (whom she identified as Moore) was waiting.  The car was
parked in front of the witness' house and she was in her front

yard approximately ten feet away from the vehicle. The four-door vehicle was gray in color. One man got into the front seat. The other man got in behind the driver, but had trouble getting in, "like he had a stiff leg or something." The witness heard Moore ask the men either, "What did you get?" or, "How much did you get?"

When questioned by the Elyria police, Moore admitted that he had driven appellant and Treadwell to Rite Nau to "check it out." Moore admitted that he assumed this meant they were "gonna rob the place." In his taped confession, Moore also admitted that he had seen a shotgun before the robbery, which he believed Treadwell had brought, but Moore thought was owned by appellant. Moore stated that appellant and Treadwell went inside while Moore waited with the car. Gilliam and Treadwell returned to the car together, with money in a bag, and told Moore that they had gotten some money. Both men got into the car; appellant got into the front seat. Moore then drove them to Treadwell's house. Treadwell carried the shotgun inside and appellant went home.

Appellant was tried before the court, separately from Moore and Treadwell. The state called Moore to the witness stand, but he exercised his Fifth Amendment privilege and refused to testify. Consequently, the state offered Moore's taped confession into evidence over appellant's objection. The state also introduced appellant's taped statement into evidence. Based on these tapes and other evidence, the trial court convicted appellant of aggravated robbery with both a firearm and a prior crime of violence specification. The court of appeals affirmed.

The cause is now before this court pursuant to the allowance of a motion for leave to appeal.

Gregory A. White, Lorain County Prosecuting Attorney, and Robert F. Corts, Assistant Prosecuting Attorney, for appellee.

Joel D. Fritz, for appellant.

Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., and John S. Pyle, urging reversal for amicus curiae, Ohio Association of Criminal Defense Lawyers.

Francis E. Sweeney, Sr., J.   The sole issue before this court is whether the admission of a co-defendant's taped statement after the co-defendant becomes unavailable violated appellant's Sixth Amendment right to confront adverse witnesses. For the following reasons, we find that admission of the statement did not violate the Confrontation Clause. Accordingly, we affirm the judgment of the court of appeals.

The Confrontation Clause and the hearsay rules stem from the same roots and generally protect the same values; however, the prohibitions of the Confrontation Clause cannot be equated with the general rule prohibiting the admission of hearsay statements. White v. Illinois (1992), 502 U.S.    ,    , 116 L.Ed.2d 848, 857, 112 S.Ct. 736, 741.

The Confrontation Clause is a constitutional safeguard that ensures a defendant will not be convicted based on the charges of unseen, unknown, and unchallengeable witnesses. Lee v. Illinois (1986), 476 U.S. 530, 540, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 525. Thus, the Confrontation Clause bars the

admission of some evidence that would otherwise be admissible under a hearsay exception. Idaho v. Wright (1990), 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638, 651. When a hearsay declarant is not present for cross- examination at trial, the Confrontation Clause requires a showing that he is unavailable and that the statement bears adequate "indicia of reliability." Ohio v. Roberts (1980), 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 607-608. The reliability standard can be satisfied without more in a case where the evidence falls within a firmly rooted hearsay exception. Id. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. Otherwise, to satisfy the Confrontation Clause the evidence must be supported by a showing of "particularized guarantees of trustworthiness." Id.

In the present case, we initially find that Moore's statement falls within an established hearsay exception as a statement against interest, Evid.R. 804(B)(3). The state called Moore to testify in its case-in-chief, but Moore asserted his Fifth Amendment right against self-incrimination and refused to testify. By doing so, Moore became "unavailable" for purposes of the unavailability requirement of Evid.R. 804. State v. Landrum (1990), 53 Ohio St.3d 107, 113, 559 N.E.2d 710, 719.

Pursuant to Evid.R. 804(B)(3), a statement may be admitted as an exception to the hearsay rule if the declarant is unavailable and it is a "statement against interest." To qualify as a statement against interest, it must be shown that the statement "tended to subject" the declarant to criminal liability so that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. United States v. Garcia (C.A.7, 1990), 897 F.2d 1413, 1420.

Clearly, in the present case Moore's statement tended to subject the declarant, Moore, to criminal liability. Moore admitted he had driven appellant and Treadwell to Rite Nau "to check it out." Moore admitted that he assumed this meant they were "gonna rob the place." Moore further admitted that he had seen a shotgun before the robbery, which he believed Treadwell had brought but Moore thought was owned by appellant. Moore stated further that appellant and Treadwell returned to the car together, with money in a bag, and that Moore drove them away from Rite Nau. This statement exposes Moore to criminal liability and, thus, is a "statement against interest" as provided by Evid.R. 804(B)(3).

Finally, Evid.R. 804(B)(3) requires that corroborating circumstances clearly indicate the trustworthiness of the statement before the statement against interest becomes admissible. The determination of whether sufficient corroborating circumstances exist generally rests within the sound discretion of the trial court. State v. Landrum, supra, 53 Ohio St.3d at 114, 559 N.E.2d at 720. In the present case, there are sufficient corroborating circumstances which indicate that the statement is trustworthy. The declarant, Moore, gave a statement to Detective Medders while Moore was in custody. Moore was read his Miranda rights and stated that he understood his rights and indicated his willingness to voluntarily make a statement. Prior to making the statement, Moore was advised

that the statement was in regard to the robbery at Rite Nau. The evidence shows no discussion of any promises or offers in exchange for the statement. Furthermore, the content of Moore's statement was corroborated by other witnesses' testimonies.

Based on all the surrounding circumstances, we find that the trial court did not abuse its discretion in determining that Moore's statement was trustworthy. Accordingly, we conclude that the statement met the requirements of a statement against interest under Evid.R. 804(B)(3) and, therefore, did not violate the Confrontation Clause as the evidence was admissible pursuant to a firmly rooted exception to the hearsay rule.

In addition, we also find that Moore's statement did not violate the Confrontation Clause, since it is supported by "particularized guarantees of trustworthiness." See Ohio v. Roberts, supra, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. The guarantees of trustworthiness must be shown from the totality of the circumstances. Idaho v. Wright, supra, 497 U.S. at 819, 110 S.Ct. at 3148, 111 L.Ed.2d at 655. As the lower court concluded, the reliability of Moore's confession was not as inherently suspect as the typical co-defendant's confession referred to in the United States Supreme Court case, Lee v. Illinois, supra, 476 U.S. at 541, 106 S.Ct. at 2062, 90 L.Ed.2d at 526. Moore's statement did not attempt to exonerate Moore and shift the blame to another co-defendant. As previously discussed, Moore admitted that he drove Treadwell and appellant to Rite Nau; that he knew these two men planned to "rob the place" and that they had a shotgun; and that he waited outside to drive the men away after they left Rite Nau. Other witnesses at trial corroborated Moore's statement. Thus, the content of the statement is "particularly worthy of belief," as the declarant incriminated himself by making the statement. See Idaho v. Wright, supra, at 819, 110 S.Ct. at 3148, 111 L.Ed.2d at 665. In addition, Moore gave the statement to police after having been fully advised of both his rights and the reason for the questioning. The evidence shows no discussion of any promise or consideration in exchange for the statement. Thus, the circumstances surrounding the making of the statement tend to demonstrate its trustworthiness.

Considering the totality of the circumstances discussed above, we conclude that the trial court did not abuse its discretion in concluding that the evidence was supported by "particularized guarantees of trustworthiness" such that its admission did not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution.

Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

Moyer, C.J., Douglas, Resnick and Pfeifer, JJ., concur.

A.W. Sweeney and Wright, JJ., dissent.

Wright, J., dissenting. I respectfully dissent.

The majority correctly recognizes that the Confrontation Clause bars the admission of some evidence that would otherwise be admissible as a hearsay exception. The majority also correctly states the Roberts test that the declarant must be

available for cross-examination and the declarant's statement must bear adequate "indicia of reliability." Finally, the majority correctly states that the reliability standard can be satisfied where the evidence falls within a firmly rooted hearsay exception or is supported by a showing of "particularized guarantees of trustworthiness." Unfortunately, after stating the law correctly to this point in its analysis, the majority misunderstands what constitutes a firmly rooted hearsay exception and a showing of particularized guarantees of trustworthiness.

The majority finds that the Roberts reliability standard is met in both ways: Moore's statement falls under an established hearsay exception as a statement against interest pursuant to Evid. R. 804(B)(3) and the statement is supported by particularized guarantees of trustworthiness. The majority finds the statement is an established hearsay exception as a statement against interest because Moore's statement "tended to subject the declarant, Moore, to criminal liability." What the majority ignores, but the court of appeals recognized, is that the United States Supreme Court has specifically rejected justifying the admission of co-defendants' statements on this basis. The court stated:

"We reject respondent's categorization of the hearsay involved in this case as a simple 'declaration against penal interest.' That concept defines too large a class for meaningful Confrontation Clause analysis. We decide this case as involving a confession by an accomplice which incriminates a criminal defendant." Lee v. Illinois (1986), 476 U.S. 530, 544, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514, 528, fn.5.

Since Moore's statement cannot be admitted against Gilliam as a firmly rooted hearsay exception, it must be supported by a showing of particularized guarantees of trustworthiness to be admissible. The majority makes two errors in concluding Moore's statement meets this test. First, the majority looks beyond the circumstances surrounding the making of the statement to other evidence admitted at trial. Second, the majority concludes that Moore's statement is reliable, since Moore implicated himself in criminal activity. Again, the United States Supreme Court has specifically rejected both aspects of the majority's approach.

Ironically, the majority cites the very page of the opinion in Idaho v. Wright (1990), 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638, which repudiates its position. The United States Supreme Court noted that the state of Idaho argued that "a finding of 'particularized guarantees of trustworthiness' should instead be based on the consideration of the totality of the circumstances including not only the circumstances surrounding the making of the statement, but also other evidence at trial that corroborates the truth of the statement. We agree that 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances, but we think the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." (Emphasis added.) Id. at 819, 110 S.Ct. at 3148, 111 L.Ed.2d at 654-655.

The court further stated that "[i]n other words, if the

declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." The court gave the "excited utterance" and "dying declaration" hearsay exceptions as examples where "the circumstances surrounding the making of the statement provides sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous." Id. at 820, 110 S.Ct. at 3149, 111 L.Ed.2d at 655. Thus, the majority impermissibly looked to other evidence beyond the circumstances surrounding the making of Moore's statement to justify its conclusion that Moore's statement was reliable.

The majority also incorrectly concludes that the fact Moore implicated himself in criminal activity makes his statement reliable. To justify this conclusion, the majority states that "the reliability of Moore's confession was not as inherently suspect as the typical co-defendant's confession referred to in the United States Supreme Court case, Lee v. Illinois ***. Moore's statement did not attempt to exonerate Moore and shift the blame to another co-defendant." (Citation omitted.)

Again, the majority gives the impression that Supreme Court precedent justifies its position. However, the majority does not discuss the facts of Lee v. Illinois (1986), 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514. Those facts make it apparent that Lee is not distinguishable from the present case. The co-defendant in Lee did not try to "exonerate" himself or "shift" the blame to the other co-defendant. What he did was make a statement which inculpated both defendants. Co-defendants Lee and Thomas were charged with murder. Lee gave a statement to the police indicating the murders occurred without premeditation. Thomas gave a statement to the police indicating that he and Lee had discussed the murders in advance. Despite the fact Thomas inculpated himself in the murder, the Supreme Court ruled that Thomas's statement could not be admitted against Lee because to do so violated the Confrontation Clause of the Sixth Amendment.

The majority's conclusion that Moore did not attempt to exonerate himself or shift blame to the other co-defendants also is not supported by the statement itself. What were the circumstances surrounding the making of Moore's statement? Moore's vehicle was identified by a witness as the vehicle involved in the robbery. The police took Moore into custody to interrogate him. Listening to Moore's statement it is apparent he was trying to minimize his involvement and maximize the involvement of Gilliam and Treadwell. Moore initially claimed that he just gave Gilliam and Treadwell a ride but did not know what they planned to do. Moore said they merely told him they wanted to "check something out." Moore continued to deny any prior knowledge about the robbery. Finally under persistent questioning by police, Moore stated he "guessed" you could say that he knew they were going to the Rite Nau to rob it.

Neither the circumstances surrounding the making of Moore's statement nor the statement itself overcomes the presumption of unreliability accorded to a co-defendant's statements. As the Supreme Court has said, "[o]ur cases recognize that this truthfinding function of the Confrontation

Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination. As has been noted, such a confession 'is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. *** More than this, however, the arrest statements of a co-defendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.' ***

"***

"*** The true danger inherent in this type of hearsay is, in fact, its selective reliability. As we have consistently recognized, a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." Lee v. Illinois, at 541, 545, 106 S.Ct. at 2062, 2064, 90 L.Ed.2d at 526, 529.

The admission of Moore's statement into evidence against Gilliam violated Gilliam's Sixth Amendment right to confront witnesses. For that reason, I would reverse the court of appeals.

A.W. Sweeney, J., concurs in the foregoing dissenting opinion.