OPINION
This matter came on for consideration on Smith's motion to advance following a remand from the United States Supreme Court in accordance with its decision in Lilly v. Virginia (June 10, 1999), 1999 WL 373136. In Lilly, the Supreme Court directed the state court there,
 to consider in the first instance whether this Sixth Amendment violation was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18 * * *.
In like manner, we have considered whether the violation of the Confrontation Clause constitutes harmless error beyond a reasonable doubt and have concluded that admission of Iris Wilson's statement constitutes harmless error.
The record reflects that during the day on August 1, 1996, Iris Wilson and Paul Smith, a Jamaican, drove around in an effort to collect a drug debt from "Bootsie," a.k.a. Mock Rogers; later that evening, Smith saw Rogers, Kenyatta Wells, and Shantell Jones leave the Calypso Bar, located at Lakeshore and St. Clair Avenue, in Cleveland. As they drove off in Wells' pickup truck, Smith told Wilson to follow them, and when Wells reached the intersection of Lakeview Avenue and Dupont, Wilson yelled to Bootsie. Wells drove on, but when he reached the next light, Wilson again yelled, "Bootsie, somebody wants to see you," and at that point, Smith exited the car, walked over to the passenger side of Wells' truck, shot out the window, put his hand into the vehicle, and shot Wells in the right calf. Rogers, believing he had been shot, told Wells, "I am hit! I am hit! It was Iris and Paul."
Wells then drove to a nearby Finast grocery store, where a security guard called police and an ambulance to transport Wells to the hospital. Officer Kennedy Jones of the Sixth District Police Department arrived at the Finast store, observed bullet holes in the vehicle, spoke with Rogers and Shantell Jones, who appeared to be visibly shaken, and through that conversation, learned the identities of Smith and Wilson.
Following an investigation, police arrested Wilson and Smith, and the grand jury returned indictments against both for felonious assault in connection with the shooting of Wells. While in custody and after she had an opportunity to speak with her defense attorney who advised her not to make a written statement, Wilson signed a waiver of her rights and gave a written statement to the police which detailed that she drove Smith from Calypso's where he first spotted Rogers to East 110th and Lakeview. She further related that Smith then exited the car and started shooting into Wells' truck. Smith got back into the vehicle and told Wilson to drive. The record does not reveal that the state offered her any consideration in exchange for her statement.
At trial and after the jury had been seated but prior to opening statements of counsel, the court ruled that Wilson's statement would not be admitted and, in response, the state dismissed its case against her and proceeded with its case against Smith. During its case-in-chief, the state called three witnesses, including Wells, who recounted the events of August 1, 1995, identified Smith as the gunman, and testified that Rogers had told him that Smith did the shooting just after it had occurred. The state next called Wilson, who invoked her Fifth Amendment right against self-incrimination and refused to testify even after the state granted her transactional immunity because she feared federal prosecution for harboring Smith, an illegal alien. The state then offered, and the court admitted, the written statement Wilson had given to the police in which she stated that Smith shot Wells. The state then called Officer Jones who had observed the bullet holes inside of Wells' truck and who had spoken with Rogers and Jones within 30 minutes of the shooting. He testified to the suspects' identities, which the court admitted under the excited utterance exception to the hearsay evidence rule. Following deliberation, the jury returned a verdict finding Smith guilty of felonious assault.
On appeal, Smith raised several assignments of error, one of which dealt with the denial of his right to confront his accusers because Wilson refused to testify but the court admitted her statement which identified him as the gunman.
In our initial consideration of this issue, we cited State v.Gilliam (1994), 70 Ohio St.3d 17, 19, where the court examined the interaction between a statement's admissibility under Evid.R. 804 (B) (3) and the Confrontation Clause of the constitution, and held that statements admitted pursuant to Evid.R. 804 (B) (3) do not violate the confrontation clause, provided the declarant is unavailable and the statement bears adequate indicia of reliability. The court in Gilliam further stated that "the reliability standard can be satisfied without more in a case where the evidence falls within a firmly rooted hearsay exception" such as a statement against penal interest.
In Lilly, supra, where the United States Supreme Court considered a similar case involving a violation of the Confrontation Clause, the court stated:
 The simple categorization of a statement as "against penal interest" defines too large a class for meaningful Confrontation Clause review. Such statement are offered into evidence (1) as voluntary admissions against the declarant; (2) as exculpatory evidence offered by a defendant who claims that the declarant committed, or was involved in, the offense; and (3) as evidence offered by the prosecution to establish the guilt of an alleged accomplice of the declarant. The third category, which includes statements such as Mark's, encompasses statements that are presumptively unreliable, * * * even when the accomplice incriminates himself together with the defendant.
Further, the court held:
 The admission of Mark's untested confession violated petitioner's Confrontation Clause rights. Adhering to the Court's general custom of allowing state courts initially to assess the effect of erroneously admitted evidence in light of substantive state criminal law, the Virginia courts are to consider in the first instance whether this Sixth Amendment violation was "harmless beyond a reasonable doubt." * * *.
By journal entry, the United States Supreme Court reversed our determination and remanded this case to us for further review in light of its decision in Lilly. Therefore, upon remand, we are obligated to consider the presumptively unreliable statement given by Wilson to the police which the state introduced at trial to identify Smith as the perpetrator in this shooting. Here, as inLilly, we are concerned whether the admission of that statement constitutes harmless error beyond a reasonable doubt.
Crim.R. 52 provides in part:
 Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.
When constitutional rights are implicated, in order for error to be harmless, a reviewing court must find overwhelming evidence exclusive of the tainted materials and a finding of harmless error beyond a reasonable doubt. See Chapman v. California (1967),386 U.S. 18, 24.
The record before us contains no evidence that at the time Wilson gave her statement, she was coerced or under duress. We do know that she had counsel, who had advised her by telephone not to make a statement, but that after speaking with him, she waived her rights and voluntarily chose to make a statement to the police about the incident. Nothing suggests any offer or consideration had been extended to her or her counsel at that point in time, and the inferences from the subsequent events even up to the day of trial corroborate that no such offer had been extended to her in an effort to have her incriminate Smith. This is strong evidence that she acted independent of Smith and that her statement is trustworthy because it had not been hastily given in exchange for some negotiated leniency. Further, the prosecutor did not offer her transactional immunity until a month later, after the trial had started, and after the court ruled that her written statement would not be admitted into evidence.
We are further persuaded that overwhelming evidence of Smith's identity exists in the record exclusive of Wilson's statement. Two witnesses, Wells and Officer Jones, each of whom testified about Smith as the gunman and each of whom had separate involvement in the case. Their testimony, standing alone, could have provided an independent basis for the jury's verdict, and Wilson's written statement merely served to corroborate other evidence of Smith's identity and did not, therefore, by itself, form the basis of the jury's verdict. Accordingly, we have concluded that the admission of Wilson's written statement in this case constitutes harmless error beyond a reasonable doubt.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON, J., MICHAEL J. CORRIGAN, J., CONCUR.
 __________________________________ PRESIDING JUDGE TERRENCE O'DONNELL