OPINION
Defendant-appellant, Walter Thompson, appeals his conviction in the Jefferson County Common Pleas Court for felonious assault after a trial to a jury.
On November 22, 1997, appellant went to a party at 635 Logan Street in the City of Steubenville after he was told that something was wrong with his cousin, Donald Harris, who was attending the party. (Tr. 346-47). Appellant and Harris were both members of the street gang known as the Crips. (Tr. 344-45). Appellant testified that he took his firearm, an Intratec 9, because the previous week some members of a rival street gang, known as the Bloods, had pulled guns on he and Harris. (Tr. 347).
When appellant arrived at the party, Harris was not there. Appellant decided to leave but when he saw Harris outside, he stopped to talk with him. (Tr. 350). At this time, appellant testified, Wise God Allah (victim) came from the bushes and pulled out a gun. (Tr. 353). Appellant ran in the house but eventually came back out to see where the victim had gone. (Tr. 353)
At this point, a man named Willie Hubbard (Hubbard) arrived with his friends, all carrying guns. (Tr. 353-54). Someone said "there he go right there," referring to the victim. (Tr. 354) Hubbard and his friends ran outside with their guns followed by Harris and then appellant. (Tr. 354). Appellant testified that he heard shots. (Tr. 354). Once the shooting started, appellant fired his gun approximately three times. (Tr. 356). Appellant testified that he shot into the air to look brave in front of his friends and never fired at the victim. (Tr. 355-56, 386). However, in a voluntary written statement appellant said he was shooting down the street. (Tr. 199). The victim was shot once in the neck and died as a result. (Tr. 121-22)
On December 2, 1997, the Steubenville Police Department obtained a written statement from Hubbard in which he denied any involvement in the shooting. A second written statement was obtained on May 4, 1998 in which Hubbard admitted his involvement and was asked to name the other individuals who were firing at the victim. He listed several people including appellant.
On May 1, 1998, the police executed a search warrant of appellant's home and discovered a sawed off shotgun, an Intratec 9, and a clip with fourteen live rounds. (Tr. 186-87). The bullet that was found in the victim's body was excluded as having been fired from appellant's gun. (Tr. 313). However, a shell casing found down the street matched appellant's Intratec 9. (Tr. 258). Appellant subsequently gave police a voluntary written statement regarding the shooting. In the statement, appellant admitted his involvement and wrote, "we were all shooting down towards Sixth and Logan." When asked if the Intratec 9 found at his house was the same gun he fired at Wise God Allah, he responded "Yes." Consequently, appellant was arrested and charged with numerous crimes for his involvement in the shooting, including the felonious assault charge.
On May 26, 1998, the police obtained a voluntary written statement from Darl Keith West, who was also charged in relation to the shooting. West was asked who shot at the victim and he listed several individuals including appellant. At appellant's trial however, West testified that he misunderstood that question and only knew that appellant had a gun but did not know whether appellant fired at the victim or in the air. (Tr. 155-56)
On June 25, 1998, police obtained a voluntary written statement from Donald Harris, who was also charged for his involvement in the shooting. When he was asked who was shooting at the victim he too implicated appellant.
Appellant was charged with: unlawful possession of a dangerous ordnance, in violation of R.C. 2923.17; receiving stolen property, in violation of R.C. 2913.51; complicity to murder, in violation of R.C. 2903.02 and 2923.03; attempted murder, in violation of R.C. 2903.02 and 2923.02; felonious assault, in violation of R.C. 2903.11(A)(2); and aggravated riot, in violation of R.C. 2917.02(A)(3). The trial court overruled appellant's motion in limine of August 18, 1998, to prohibit plaintiff-appellee, State of Ohio, acting through the Jefferson County Prosecutor's Office, from introducing Hubbard's and Harris' statements at trial. The jury returned its verdict on September 25, 1998 and found appellant guilty of two counts of unlawful possession of a dangerous ordnance with firearm specifications, two counts of receiving stolen property with firearm specifications, one count of felonious assault with a firearm specification, and aggravated riot with a firearm specification. They found appellant not guilty of complicity to murder and attempted murder.
The trial court denied appellant's motion of September 29, 1998 for acquittal on the felonious assault conviction and in the alternative for a new trial. On December 4, 1998, the trial court entered judgment on the jury's verdict and sentenced appellant to a total of fourteen years in prison. Appellant filed his timely notice of appeal on December 9, 1998.
Appellant's first assignment of error states:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT OVERRULED THE MOTION FOR JUDGMENT OF ACQUITTAL AND IN THE ALTERNATIVE MOTION FOR A NEW TRIAL FOLLOWING THE INCONSISTENT VERDICT OF THE JURY."
Appellant argues that the jury's verdict of guilty on the felonious assault charge is inconsistent with the jury's verdict of not guilty on the charges of complicity to murder and attempted murder. Appellant's argument focuses on the defense he presented at trial, that he fired his weapon in the air and not at the victim. Appellant contends that this left the jury with only two options — to believe that he fired his weapon in the air, or to believe that he fired his weapon at the victim. Appellant argues that since the jury acquitted him of the charges of complicity to murder and attempted murder, they necessarily believed that he did not intend to kill the victim and, therefore, it makes no sense that the jury would believe that he had tried to cause physical harm to the victim.
Appellant's argument is flawed for two reasons. First, the jury's verdict was not necessarily inconsistent. As will be discussed under appellant's second assignment of error, infra, there was sufficient evidence to establish that appellant fired his weapon at the victim. From this evidence, the jury could have reasonably inferred that appellant specifically intended to kill the victim or that he only was aware that his conduct would probably cause physical harm to the victim. Since there were multiple shooters involved, each at different angles to and distances away from the victim, there was mitigating evidence presented that would have supported the latter inference over the former.
Second, even if we were to assume that the verdicts were inconsistent, the Ohio Supreme Court has held that an inconsistency in a verdict cannot arise out of inconsistent responses to different counts. State v. Brown (1984), 12 Ohio St.3d 147, syllabus; Griffin v. State (1868), 18 Ohio St. 438,444-445. The court has held that an inconsistency can only arise when the jury gives inconsistent responses to the same count.Brown, 12 Ohio St.3d at syllabus; accord State v. Gleason (1996),110 Ohio App.3d 240, 245. The court explained that each count in an indictment charges a distinct offense and is independent of all other counts. Following that reasoning, the court found that a jury's decision as to one count is independent of and unaffected by the jury's finding on another count.
Furthermore, the United States Supreme Court addressed the precise issue of a defendant being acquitted on a predicate offense while being convicted of a compound offense in UnitedStates v. Powell (1984), 469 U.S. 57. The court rejected the contention that such a verdict necessitates the defendant's acquittal on the compound offense or that the defendant should be granted a new trial. The court explained that inconsistencies between verdicts on separate counts do not necessarily mean that the jury made a mistake. In fact, the court found that such inconsistencies could just as reasonably be the product of jury lenity. The court further elucidated that any finding that the inconsistency was the result of some error that worked against the defendant "would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." Id., 469 U.S. at 66.
Accordingly, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ADMITTING THE STATEMENTS OF CODEFENDANTS INTO EVIDENCE AT TRIAL."
Appellant argues that the trial court erred when it allowed the state to admit into evidence the written statements of Willie Hubbard and Donald Harris, both of whom refused to testify at trial. Appellant argues that admission of these statements violated his right to confront the witnesses against him. The trial court permitted admission of the statements pursuant to Evid.R. 804(B)(3) and on the authority of State v. Gilliam
(1994), 70 Ohio St.3d 17.
Evid.R. 804(B)(3) states in part:
 "(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
"* * *
 "(3) Statement against interest. A statement that * * * at the time of its making * * * so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
Hubbard's and Harris' statements could qualify as an exception to the hearsay rule. However, even if the statements fit within an exception to the hearsay rule, the statements may still be excludable as a violation of appellant's Confrontation Clause rights. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."
"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig (1990),497 U.S. 836, 845. In cases such as this, where the declarant remains unavailable at trial and the state seeks to offer his out-of-court statements against the defendant, we must decide whether the Confrontation Clause permits the state to deny the accused his usual right to force the declarant to submit to cross-examination.
A criminal defendant may be denied the right to cross-examination without violating the Confrontation Clause if the court finds that the proffered out-of-court statements are so trustworthy that adversarial testing will add little to the statements' reliability. White v. Illinois (1992), 502 U.S. 346,357, 112 S.Ct. 736, 743. In other words, the right to confrontation is not absolute and "does not necessarily prohibit the admission of hearsay statements against a criminal defendant." Idaho v. Wright (1990), 497 U.S. 805, 813,110 S.Ct. 3139, 3145. Hearsay statements are deemed sufficiently reliable to allow their admission without the benefit of cross-examination when the statements (1) fall within a firmly rooted hearsay exception, or (2) contain adequate indicia of reliability. Ohiov. Roberts (1980), 448 U.S. 56, 66, 100 S.Ct. 2531, 2539. Therefore, to be admissible, Hubbard's and Harris' statements must meet one of the prongs of Roberts.
The trial court, in making the Roberts determination, relied onGilliam, which held that "[t]he reliability standard can be satisfied without more in a case where the evidence falls within a firmly rooted hearsay exception." Gilliam,70 Ohio St.3d at 19-20. There, the court found that a statement against interest was a firmly rooted hearsay exception, and allowed the statement to be admitted.
However, in an opinion issued during the pendency of this appeal, the United States Supreme Court explicitly considered the use of statements against penal interest offered by the prosecution in the absence of the declarant to incriminate a criminal codefendant. In Lilly v. Virginia (1999), 527 U.S. 116,119 S.Ct. 1887, 144 L.Ed.2d 117, the court held that such statements do not categorically satisfy Confrontation Clause concerns. See Id., 527 U.S. at ___, 119 S.Ct. at 1899-1901.
The court divided the category of statements against penal interest into three subcategories: (1) those used as voluntary admissions against the declarant; (2) those used as exculpatory evidence offered by a defendant who claims that the declarant committed, or was involved in, the offense; and (3) those used as evidence offered by the prosecution to establish the guilt of an alleged accomplice of the declarant. Id., 527 U.S. at ___119 S.Ct. at 1895-1897. The court recognized that statements in this last category — like those at issue here — do not fall into a firmly rooted hearsay exception. Id., 527 U.S. at ___119 S.Ct. at 1899.
The court observed that it had "over the years `spoken with one voice in declaring presumptively unreliable accomplices' confessions that incriminate defendants.'" Id., 527 U.S. at ___119 S.Ct. at 1897, (quoting Lee v. Illinois [1986], 476 U.S. 530,541, 106 S.Ct. 2056, 2062). The court reaffirmed its prior recognition that "`th[e] truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination. * * * "Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence."'" Id., 527 U.S. at ___, 119 S.Ct. at 1898.
In conclusion, the court explicitly held "that accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." Lilly, 527 U.S. at ___, 119 S.Ct. at 1898-1899.
Discussing the impact of the Lilly decision on Ohio jurisprudence, the Ohio Supreme Court in State v. Madrigal
(2000), 87 Ohio St.3d at 386-387, stated:
 "The holding of the Supreme Court in Lilly requires us to overrule the contrary holding in State v. Gilliam, that a `statement against interest,' under Evid.R. 804(B)(3), falls into the `firmly rooted hearsay exception.' This, however, does not impose a "`blanket ban on the government's use of [nontestifying] accomplice statements that incriminate a defendant.'" Rather, out-of-court statements made by an accomplice that incriminate the defendant may be admitted as evidence if the statement satisfies the second prong of the test announced in Ohio v. Roberts, supra; Lilly, 527 U.S. at ___ 119 S.Ct. at 1899, 144 L.Ed.2d at 133, fn. 5.
 "The statements would be admissible only if they exhibit a guarantee of trustworthiness or indicia of reliability. Yet, this type of statement has consistently been deemed "`presumptively unreliable.'" See Lilly, 527 U.S. at ___, 119 S.Ct. at 1897, 144 L.Ed.2d at 131 (citing Lee, 476 U.S. at 541, 106 S.Ct. at 2062, 90 L.Ed.2d at 526). While the Supreme Court has clearly stated that `the presumption of unreliability that attaches to codefendants' confessions * * * may be rebutted,' Lee, 476 U.S. at 543, 106 S.Ct. at 2063, 90 L.Ed.2d at 527, the more recent Lilly plurality cautions us that `[i]t is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old ex parte affidavit practice — that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.' Lilly, 527 U.S. at ___, 119 S.Ct. at 1900, 144 L.Ed.2d at 135."
In this case, appellee's arguments for trustworthiness rely on the fact that other evidence corroborated Hubbard's and Harris' statements. However, the fact that other evidence corroborates the statements is irrelevant. Lilly, 527 U.S. at ___119 S.Ct. at 1900-1901; Madrigal, 87 Ohio St.3d at 387. "The relevant circumstances include `only those that surround the making of the statement and that render the declarant particularly worthy of belief.' Idaho v. Wright, 497 U.S. at 819, 110 S.Ct. at 3148,111 L.E.2d at 655. The circumstantial guarantees of trustworthiness are those that exist at the time the statement was made and do not include those that may be added by using hindsight. Id.,497 U.S. at 820, 110 S.Ct. at 3149, 111 L.Ed.2d at 655." Madrigal,87 Ohio St. 3d at 387.
A review of the record in this case reveals no facts or circumstances sufficient to rebut the presumption that both Hubbard's and Harris' statements are unreliable. Although the statements were to some degree corroborated by other evidence,Lilly holds that is simply not enough. Appellee also points to the fact that Hubbard and Harris were read their Miranda rights prior to giving the statements. However, Lilly also found that the fact that the police informed the accomplice/declarant of hisMiranda rights does not render the circumstances surrounding his statements significantly more trustworthy. Lilly, 527 U.S. at ___,119 S.Ct. at 1901. In sum, this case is exactly the type of case where Lilly cautioned that it would be highly unlikely to rebut the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame because the government was involved in the statements' production, the statements describe past events, and the statements have not been subjected to adversarial testing. Lilly, 527 U.S. at ___ 119 S.Ct. at 1900.
Since the admission of the statements violated appellant's Confrontation Clause rights, the final and remaining inquiry is whether the Sixth Amendment error was "harmless beyond a reasonable doubt." Madrigal, 87 Ohio St.3d 388. "This inquiry is not simply a sufficiency of the remaining evidence inquiry; rather, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Chapman v. California (1967), 386 U.S. 18, 23,87 S.Ct. 824, 827, 17 L.Ed.2d 705, 710." Id.
Other evidence presented at trial included the testimony of Michael Kusluski, a forensic scientist in the firearms section for the Attorney General's Office in the Bureau of Criminal Identification and Investigation, and Detective John Lelless. Kusluski testified that a shell casing found down the street from where appellant was standing at the time of the shooting was fired from an Intratec 9, which was the same kind of weapon used by appellant. (Tr. 319, 326). Detective Lelless testified that appellant wrote in his statement of May 1, 1998 that he fired his weapon at Wise God. (Tr. 198-199). This evidence, especially appellant's own confession, supports a finding that theSixth Amendment error was "harmless beyond a reasonable doubt."
Accordingly, appellant's second assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs, Waite, J., concurs.
 APPROVED: _____________________ GENE DONOFRIO JUDGE.