JOURNAL ENTRY AND OPINION
{¶ 1} Co-appellants Herbert King and Mark Spencer appeal a judgment of the juvenile court that adjudicated them delinquent children for raping a fourteen year old female. On appeal, they assigned the following errors for our review.
 {¶ 2} I. THE JUVENILE COURT ERRED TO THE PREJUDICE OF APPELLANT IN DESIGNATING VOLUNTARY INTOXICATION, IN AND OF ITSELF, TO BE A PHYSICAL/MENTAL IMPAIRMENT FOR THE PURPOSES OF A VIOLATION OF RAPE, REVISED CODE SECTION 2907.02(A)(1)(C).
 {¶ 3} II. THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S MOTION FOR ACQUITTAL FOR INSUFFICIENCY OF THE EVIDENCE PURSUANT TO OHIO RULES OF CRIMINAL PROCEDURE (CRIM.R. 29).
 {¶ 4} III. ALTERNATIVELY, THE TRIAL COURT'S GENERAL VERDICT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 5} IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DRAWING AN INFERENCE UPON AN INFERENCE, WITH RESPECT TO THE VICTIM'S INCAPACITY TO CONSENT AT THE TIME OF THE ALLEGED RAPE.
{¶ 6} Additionally, Spencer assigns the following as error:
 {¶ 7} V. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT MARK SPENCER BY ADMITTING INTO EVIDENCE CO-DEFENDANT'S HEARSAY STATEMENTS WHICH DID NOT QUALIFY UNDER A HEARSAY EXCEPTION.
 {¶ 8} VI. ALTERNATIVELY, THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT MARK SPENCER BY ADMITTING INTO EVIDENCE CO-DEFENDANT'S HEARSAY STATEMENTS IN VIOLATION OF THE CONFRONTATION CLAUSE, U.S.C. [sic] CONST. AMEND. 6.
{¶ 9} Having reviewed the record and the pertinent law, we affirm the decision of the trial court as to both Spencer and King. The apposite facts follow.
{¶ 10} On February 20, 2000, the fourteen-year-old victim and a female friend paged Mike Spencer, Mark Spencer's brother, looking for something to do; however, Mark Spencer responded to the page. He invited the girls to join him at King's house that evening. The girls arrived and the group first watched television in the basement of the home, while King's stepfather remained upstairs. At some point, the victim began asking for alcohol. Both Spencer and King stated they refused her requests. Mark Spencer testified eventually they acquiesced. The victim testified she drank six to eight triple shots of hard liquor. Spencer stated he and King did not drink. The other female drank from the same cup as the victim. She did not consume as much as the victim.
{¶ 11} The victim further testified she began to feel drunk and sat down on a weight bench in the basement. Someone turned off the lights and she remembered Spencer, King, and her girlfriend walking out of the room. She laid down and fell asleep. She remembered seeing someone standing in front of her and heard Mark say all these damn buttons referring to the button-fly pants she had on that night. She recalled Mark performed oral sex on her and waking up in the hospital the next morning. She had a blood alcohol level of .25.
{¶ 12} The victim's father testified when he arrived at the King home to pick up his daughter and he found her lying in the snow, unconscious and fully clothed. He called 911 and an ambulance transported her to St. John Westshore emergency room. He further testified when his daughter started to regain consciousness, she said, "Mark don't, Mark stop, it hurts."
{¶ 13} Next, Dr. Maria Lozano testified as the attending physician in the emergency room who treated the victim the night of the incident that the victim responded only to negative stimuli. Further, she stated the victim on responding to questions, did not speak. Further, she testified to the victim's level of alcohol and intoxicated state.
{¶ 14} North Olmsted Detective Mel McGrath testified to his interview with both Spencer and King. During which, King admitted he used his finger to penetrate the victim's vagina, fondled her breasts, and ejaculated in her mouth after she performed oral sex on him. McGrath further stated Mark Spencer admitted he kissed the victim, fondled her breasts, and began to put his hands down her pants. McGrath testified Mark Spencer admitted he was on top of the victim. During the interview King admitted to entering the weight room after Spencer and observing the victim lying on the weight bench with no pants, underwear, and shoes.
{¶ 15} Mark Spencer testified when he and the victim were alone, she kissed him and he reciprocated the affection. He also stated he touched her breast and began going down her pants but stopped; he told the victim he could not continue because he had a girlfriend and the victim told him to go get King. He witnessed the victim giving King oral sex. Approximately fifteen minutes later, King came out, and later he and King dressed her. Mark called the other female's mother and told her to come get her daughter who was drunk. He and King brought the victim's companion upstairs to her mother and went back downstairs to get the victim, who was vomiting. At that time, the victim's father arrived.
{¶ 16} On February 28, 2000, the State charged Spencer and King with delinquency rape in violation of R.C. 2907.02(A)(1). Following a trial, the court adjudicated both Spencer and King delinquent and sentenced them to a commitment to the Ohio Department of Youth Services for a minimum of twelve months. In the summer of 2001, the court granted motions for judicial release and placed both Spencer and King on probation.
{¶ 17} In their first assignment of error, Spencer and King allege the court erred in designating voluntary intoxication to be a physical, mental impairment for the purposes of rape.
{¶ 18} Spencer and King argue the General Assembly did not intend to include a victim's voluntary intoxication within the ambit of the term "physical condition." In support of this argument, Spencer and King note the 1974 Committee Comment concludes that R.C. 2907.02 does not include the situation where a person plies his intended partner with drink or drugs with the intent of lowering the victim's inhibitions for the purpose of leading to a liaison. The comments note the reason for its conclusion is the victim voluntarily takes the alcohol or drugs which is not by force or deception; consequently, the consent of the `victim' can fairly be inferred. We disagree with this interpretation.
{¶ 19} In State v. Martin,[1] the court stated "[s]tatutes should be interpreted in a way that avoids unreasonable or absurd results."[2] It is presumed the General Assembly intended a just and reasonable result in enacting a particular statute.[3] In determining legislative intent, the court should look at the language of the statute and ascertain the apparent purpose to be accomplished, and then adopt a construction that gives effect to that purpose.[4] It is the duty of the court to give effect to the words used in a statute, not to insert new words.[5] Where a particular word employed in a statute is not defined, it will be accorded its common, ordinary, plain, everyday meaning.[6]
{¶ 20} Spencer and King's argument is identical to that made inMartin. There, the Twelfth District held:
 {¶ 21} * * * [t]he statute plainly intends to hold a person culpable for rape when that individual engages in sexual conduct with someone the individual knows or has reason to know is substantially impaired because of a mental or physical condition. While R.C. 2907.02
was not intended to criminalize sexual conduct as the result of an alcohol-induced state of "lowered inhibitions," we cannot say that it was not intended to criminalize sexual conduct where the victim is "substantially impaired" because of intoxication. Interpreting the statute in such a way would produce a profoundly absurd result.
 {¶ 22} Substantial impairment as a result of intoxication can include, but does not require, unconsciousness. Contrary to appellant's assertion, this court did not hold in State v. Duffy that a victim is substantially impaired by reason of voluntary intoxication only when that intoxication results in unconsciousness. In fact, this court reasoned in Duffy that it would be absurd to exclude from the analogous language of former R.C. 2907.12 the situation where a victim "intoxicated herself to the point of unconsciousness or impaired ability to resist." State v. Duffy, 1996 Ohio App. LEXIS 1305, *22 (Apr. 1, 1996), Fayette App. No. CA95-03-006, unreported (emphasis added). Therefore, we hold that voluntary intoxication is included in the term "mental or physical condition" as used in R.C. 2907.02(A)(1)(c). A person who engages in the sexual conduct proscribed by R.C. 2902.02(A)(1) and (c) when the victim's ability to resist or consent is substantially impaired by reason of voluntary intoxication is culpable for rape. We do not hold that all persons who engage in sexual conduct with a voluntarily intoxicated person are culpable under R.C. 2907.02(A)(1)(c). A person's conduct becomes criminal under this section only when engaging in sexual conduct with an intoxicated victim when the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired because of voluntary intoxication. (Emphasis added).
{¶ 23} Spencer and King rely on State v. Peters[7] and note the trial court held voluntary intoxication is not a mental or physical impairment as contemplated by the statue. However, in that case, the Third District is careful to state, "[w]e do not decide whether voluntary intoxication is a mental or physical condition as contemplated by Section 2907.02(A)(1)(c) of the Ohio Revised Code."
{¶ 24} In this case, testimony was presented that Mark Spencer and Herbert King engaged in sexual conduct proscribed by R.C. 2902.02(A)(1) and (c) when the victim's ability to resist or consent was substantially impaired by reason of voluntary intoxication, which they fostered. We agree with the court in Martinand hold the victim in this case could not have consented to what occurred. Furthermore, Spencer and King were aware of her inability to consent because of her intoxicated state. Here, her voluntary intoxication does not control the outcome of the case. The outcome of the case is controlled by her lack of consent and to what extent the alcohol impaired her ability to give consent. We conclude the facts of this case fit squarely within the definition of what is a physical, mental impairment, for purposes of rape. Accordingly, their first assigned error is overruled.
{¶ 25} Next, Spencer and King argue the trial court erred in finding them delinquent because the evidence is both insufficient and against the manifest weight. We disagree.
{¶ 26} Regarding the sufficiency of the evidence:
 {¶ 27} The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *.[8]
{¶ 28} The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the evidence of the claimed offense. In State v. Jenks[9], the court stated:
 {¶ 29} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citations omitted.)
{¶ 30} In this case, the state assumed the burden of proving guilt beyond a reasonable doubt for the crime of rape. R.C. 2907.02 defines rape as follows:
 {¶ 31} (A)(1) No personal shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
 {¶ 32} (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.
{¶ 33} Regarding the manifest weight of the evidence, the court in State v. Martin[10], stated:
 {¶ 34} The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
{¶ 35} Additionally, in State v. Thompkins[11], the court noted:
 {¶ 36} Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
{¶ 37} Further, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[12]
{¶ 38} As to the sufficiency, we are persuaded that the evidence when viewed in light most favorable to the State showed that both Spencer and King raped the victim. The victim testified Spencer performed oral sex on her. King admitted to having sex activity with the victim. We conclude that these facts meet the essentials of sufficiency, conflicts in the evidence, the court lost its way and created a manifest miscarriage of justice. Accordingly, these assignments of error are overruled.
{¶ 39} Spencer and King next argued the court erred when it inferred the victim could not or did not consent based solely on the fact that her blood-alcohol level was .25 when tested at 12:55 a.m. They reiterate their arguments as set forth in assignments of error two and three and allege the state failed to introduce evidence that neither Mark Spencer nor Herbert King obtained consent prior to engaging in sexual activity with the victim. However, McGrath testified, during his interview with Mark Spencer, Spencer stated the victim told him to stop and he did. Further, McGrath asked Mark whether the victim sent him "any verbal or nonverbal ques that this would be okay." Mark's response was he had no conversation prior and she had not sent him "any verbal or non verbal ques." Accordingly, the issue of consent did not turn on the victim's blood-alcohol level; rather, the testimony presented clearly established no consent had been obtained. Therefore, this assignment of error is overruled.
{¶ 40} Separately, Spencer also argues the court erred by admitting King's statement to the police because it is hearsay. Specifically, he argues King's statement is not an exception to the hearsay rule because a reasonable juvenile in his position would not have considered the statement would subject him to criminal liability.
{¶ 41} Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted.[13] However, a statement that was at the time of its making tended to subject the declarant to criminal liability that a person in the declarant's position would not have made the statement unless he believed it to be true constitutes an exception to hearsay if the declarant is unavailable.[14] A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.[15]
{¶ 42} Spencer agrees King was considered unavailable when he invoked his Fifth Amendment privilege against self-incrimination and did not testify.[16] The issue is whether King knew his statement to McGrath was against his penal interests, thus, an exception to the hearsay rule. A review of the record reveals McGrath read King his Miranda warnings on two occasions and King knew he was being questioned in regards to a criminal investigation. Further, his parents were present and were also advised of the investigation. Corroborating evidence was introduced through the victim's testimony and Spencer's own testimony. Therefore, the statement constitutes an exception to hearsay. Accordingly, this assignment of error is overruled and the judgment of the trial court affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
[1] 2000 Ohio App. LEXIS 3649, (Aug. 14, 2000), Brown App. No. CA99-09-026.
[2] State ex rel. Dispatch Printing Co. v. Wells (1985),18 Ohio St.3d 382, 384, 481 N.E.2d 632; Fifth Third Union Trust Co. v.Peck (1954), 161 Ohio St. 169, 174, 118 N.E.2d 398.
[3] R.C. 1.47.
[4] State v. S.R. (1992), 63 Ohio St.3d at 590, 594-95.589 N.E.2d 1319.
[5] Id.
[6] Id.; Sharp v. Union Carbide Corp. (1988), 38 Ohio St.3d 69,70, 525 N.E.2d 1386.
[7] 2000 Ohio App. LEXIS 3981, (Aug. 18, 2000), Paulding Co. App. No. 11-2000-05.
[8] Crim.R. 29(A)
[9] (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[10] (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
[11] (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
[12] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
[13] Evid.R. 801(C).
[14] Evid.R. 804(B)(3).
[15] Id.
[16] State v. Gillam (1994), 40 Ohio St.3d 17, 635 N.E.2d 1242.