JOURNAL ENTRY AND OPINION
Defendant-appellant Andre Pierre (appellant) appeals his convictions of felonious assault (R.C. 2903.11) and attempted murder (R.C. 2923.02/2903.02), each conviction with firearm specifications entered upon jury verdict in Cuyahoga County Common Pleas Court. For the reasons stated below, we affirm.
The record reflects that on December 10, 1998, at approximately 9:30 p.m., on Fostoria Court, an alley behind the Convenient store at West 38 Street and Denison Avenue, Charles Burdette was shot multiple times. On February 1, 1999, the Cuyahoga County Grand Jury returned a four-count indictment charging appellant with three counts of felonious assault and one count of attempted murder each count with firearm specifications related to this shooting. At his arraignment on February 8, appellant entered a plea of not guilty to the charges against him. On February 25, appellant filed a notice of alibi pursuant to Crim.R. 12.1. Before the commencement of trial, the court granted the state's motion both to amend and to renumber appellant's indictment to reflect in count one a single charge of felonious assault with two firearm specifications; and, in count two, a charge of attempted murder with firearm specifications. Further, the state proffered the anticipated testimony of Officer Cheryl Brown who testified as to the statements made to her by appellant's co-defendant, Beau Rogers, upon his arrest, which implicated appellant in the shooting. The court determined Rogers' statements to be hearsay and, thus, not admissible.
On March 8, 1999, jury trial commenced on the two charges as amended. The state, outside the presence of the jury, called Beau Rogers, appellant's co-defendant, who asserted his Fifth Amendment right against self-incrimination. Despite defense counsel's argument and objection, the court found Rogers unavailable as a witness pursuant to Evid.R. 804 and, citing State v. Gilliam (1994), 70 Ohio St.3d 17, admitted into evidence Rogers' oral statements made to the Cleveland police. The court noted counsel's objection to its ruling relative to Beau Rogers' oral statement. The court declined to admit Rogers' written statement; but, it was marked and placed in the record for potential appellate review.
The state's first witness, Karen Rohde, testified that she lived in an apartment at West 38 Street and Denison Avenue on December 10. About 9:00 p.m. that evening her attention was drawn to the alley when she heard a car door and heard what she believed to be some kids throwing firecrackers. However, when she looked out her window, she saw two men standing near a dark green car. One of the men was standing by the water heater and she was able to discern that he was a black man who wore a red knit cap and a dark sweatshirt. It appeared that the two men were arguing for three or four minutes; then, she saw four or five little flashes like firecrackers.Because she thought they were throwing firecrackers at her house, she took her dog and went out to the alley. As she came out the door, the black man fled across the street on foot and the green car sped past her.
Officer John Thomas, a twenty-year veteran of the Cleveland Police Department, testified while he and his partner, Angela Marra, were on routine patrol in the area of West 25 Street and I-71 the night of December 10, a dark green car passed them and went through a red light. He activated the patrol car's overhead lights and followed the green car to the Metro General Hospital parking lot. There, as the driver attempted to get out, he collapsed. Thomas observed holes in the victim's chest, saw the victim was ashen white and covered with blood. Officer Thomas sought medical assistance for him and after the trauma team stabilized the victim, Officer Thomas interviewed him, determined his identity to be Charles Burdette and obtained his statement. Burdette explained to Thomas that the shooting occurred during a drug deal gone bad. Thomas learned that a man who was with Beau Rogers shot the victim. Burdette described Beau Rogers as a white male, six feet tall and Rogers' accomplice, the shooter, was described as either a light skinned black male or Hispanic male, wearing a red stocking cap and a black hoodie sweatshirt. Burdette indicated that he would be able to identify both Rogers and the man who shot him. Officer Thomas broadcast the suspects' description over the radio and, as a result, Officers Brown and Juliano who patrolled the zone of West 38 Street and Denison Avenue, located Rogers at his residence and took a polaroid photo of him. The officers brought the photograph to the hospital where Burdette positively identified the photo as appellant's co-defendant, Beau Rogers. Officer Thomas testified that when the victim's green car was processed, he noted the rear window was shot out, blood was in the car and photos were taken. No shell casings were found inside the vehicle. Officer Thomas was given the name of the second suspect within the hour and searched for him that night unsuccessfully. On cross-examination, Officer Thomas conceded that although the victim was unable to provide appellant's name as the shooter, appellant's name was placed in the police report when Thomas incorporated the arrest information, which he received from Officers Juliano and Brown.
Next, Charles Burdette, the victim of the shooting, testified that although he has lived in Ashland, Ohio for six or seven years, in December 1998, he was working a construction job in Cleveland. He frequented the neighborhood at West 38 Street and Denison Avenue because he had grown up in the area and he was able to purchase crack cocaine from Beau Rogers. He explained that on December 9, the night before appellant shot him, he had approached Rogers for cocaine. When he met Rogers in the alley behind the Convenient store, Rogers jumped into his car and handed him a $20 rock. He asked Rogers to front him the rock until payday, Friday. Rogers contended that the rock was not his and he could not advance the rock to him so they argued. Rogers asked for the rock back, but Burdette refused and started to drive away. Rogers was not happy but had Burdette pull the car over to let him out. Then, the next night, December 10, Burdette went back into the neighborhood and saw Rogers on a bike standing in front of the Convenient store talking with a man whom Burdette positively identified at trial as appellant. Burdette summoned Rogers in an attempt to make amends for taking the rock and to assure Rogers that he would be paid on Friday, but Rogers waved him off. Appellant, however, waved Burdette toward the store, so Burdette pulled into the back alley. There, appellant, wearing a red knit beanie and a dark-hooded sweatshirt, was standing in the alley waving to Burdette to come towards him. Burdette described this man as having skin which appeared darker than a Caucasian, describing him as either a light-skinned black man or Puerto Rican. Burdette recognized him as Beau's friend whom he had seen previously with Beau and with whom he had a certain familiarity. Burdette asked for Rogers, explaining to appellant that he wanted to tell Rogers that he planned to make good on the 20 he had taken the day before. But, appellant looked right at Burdette, said I think it[']s a bunch of bullshit, reached around his back and pulled out a pistol. Burdette heard a pop and when he felt the bullet hit off his chest, he panicked and sped out of the alley. Burdette said appellant shot as many times as he could, four, five or six shots, with the gun still going off as he pulled away. He felt two bullets hit his chest and one hit his right arm. At West 21 Street and Denison Avenue, he pulled over, but realizing his condition was serious, he sped through a light, hit a car and tried to get to the hospital. When he saw the police car near Riverside Cemetery, he pulled in front of it to get the officers' attention. He made it to the hospital where he blacked out. When he regained consciousness, five or six police officers were present and he responded to their questions. Burdette testified that there is no doubt in his mind that appellant was the man who waved him into the alley and shot him. On cross-examination, Burdette stated that he was able to identify the photo of appellant as his assailant because he had seen appellant previously, he sat and talked with him for ten minutes face-to-face and he knew who appellant was, even though he did not know his name. Burdette concluded by saying [t]here is no way I couldn't have identified him.
Jessica Hoole, an acquaintance of appellant, testified that on the evening of December 10, between 9:30 and 10:00 p.m., appellant came to her apartment at 3201 Chestnutdale and used her phone for one call which lasted a couple of minutes. At that time, appellant was wearing a dark-hooded sweatshirt, jeans, tennis shoes and had dyed-blond hair.
The state called officer Cheryl Brown who testified that she was partnered with Paul Juliano on December 10 when they received the radio broadcast made by Officer Thomas from Metro General Hospital, which indicated that a man was shot multiple times by a light-skinned black or Hispanic male wearing a black-hooded sweatshirt and red knit skullcap and accompanied by a white male named Beau, who lived at West 42 Street and Denison Avenue. Brown, because of her familiarity with the neighborhood, determined that the suspect was probably Beau Rogers, so she requested backup and proceeded to his house. When backup responded, she and her partner went to the porch and were able to observe Rogers through the window. They knocked on his door, which was answered by an Arab male. She informed Rogers he had been named as an accomplice in a shooting and he got hysterical, denying his involvement. Nonetheless, he was handcuffed and read his Miranda warnings. When Officer Brown learned that Rogers had, in fact, been away from his house at the time of the shooting, she informed him of this fact. Then, Rogers conceded that he was involved in the event, but he denied shooting the victim and he placed the blame on appellant. From her prior experience, Officer Brown knew that Beau Rogers associated with appellant. At first, he said that Burdette had ripped off appellant during a drug transaction and appellant indicated to Rogers that he intended to look for Burdette to get his ass. So, Rogers just identified Burdette to appellant but then went home. Rogers denied hearing any shots and denied knowing what happened. Rogers described appellant as wearing a black hoodie sweatshirt, a red knit skullcap and had his hair dyed yellow. Rogers said that appellant always carries a .25 caliber pistol. Officer Brown realized that Rogers' statements were contradictory as to whether Burdette had ripped off Rogers or appellant.
That night, Officer Brown checked out various addresses seeking the shooting suspect, but with negative results. One of the officers took Rogers' photo, which she then showed to the victim in the emergency room of the hospital. The shell casings found at the scene were .25 caliber. The next day, when she followed up on information, she learned of the address at 3201 Chestnutdale. At Chestnutdale, when the officers arrived, they saw a man in a red-hooded sweatshirt, whom Brown suspected could have been appellant, walking away from the house. Officers Beverage and Mason stopped the man, grabbed him, pulled off his hood and when she saw his dyed-yellow hair, she was able to identify appellant, Rogers' claimed associate for whom they were looking. She talked to Jessica Hoole who lived at the address. Appellant was calm, cool and smiling upon his arrest. The officers handcuffed appellant and read him his Miranda rights and searched him, but no weapon was found.
The state rested subject to the admission of the state's exhibits and stipulations and the defense moved for acquittal pursuant to Crim.R. 29, which was denied by the court.
The defense called Detective James Kiefer, as if on cross-examination, who testified that he was assigned to investigate the matter and took statements from Charles Burdette, Beau Rogers and Karen Rohde. He conceded that no Gunshot Residue Test or Trace Metal Detection Test was performed on any suspect.
The alibi witness, Jason Keene, testified that he is an associate of appellant and claimed appellant was with him during the time of the shooting. He said that after work on December 10, he went home, changed his clothes and went to the Convenient store at West 38 Street and Denison Avenue. About 8:30 p.m., he picked up appellant and they drove around to various houses attempting to deliver a birthday card to appellant's cousin on the near west side. When they returned to the area of West 38 Street and Denison Avenue, he saw a half-dozen police cruisers, some with lights on, within twenty feet of Beau Rogers' house at West 42 Street. He dropped appellant off two or three blocks away and returned home. On cross-examination, Keene conceded that he became aware that appellant had been arrested for the shooting within a day or two of appellant's arrest, but he never informed the police or anyone else that he could establish an alibi for appellant.
Appellant testified on his own behalf, relating substantially the same scenario of the events of December 10 as told by his alibi witness. He said that he rode around with Jason Keene during the time of the incident. Appellant testified that he lived in the area with his aunt at West 15 Street and Denison Avenue. He knew Beau Rogers from being in juvenile with him. Appellant admitted using Jessica Hoole's phone to make a phone call to Rogers' house, during which he talked to Rogers' mother who was upset that Beau was arrested for attempted murder. Appellant denied shooting Charles Burdette, denied selling cocaine and denied carrying a .25 caliber gun. On cross-examination, appellant conceded that he had seen the victim on prior occasions when Burdette had purchased crack cocaine from Rogers. Appellant said that Beau Rogers did not tell him that Burdette had ripped Beau off the night before, but appellant admitted that he heard that Burdette had ripped off Rogers from a guy named Reg.
The defense rested and renewed its motion for acquittal pursuant to Crim.R. 29, which was denied. Closing arguments were made, the jury was charged and, after deliberations, returned verdicts of guilt on each charge of the amended indictment and on each firearm specification. At sentencing, the trial court merged count one into count two and merged the four-year gun specification into a single three-year gun specification under count two. The court imposed a term of imprisonment of ten years on count two and three years on the merged gun specification to be served prior to and consecutive with the ten years of imprisonment. Appellant timely appeals his convictions and advances two assignments of error for our review.
 I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE OUT-OF[-]COURT STATEMENTS OF THE CO-DEFENDANT, BEAU ROGERS, THROUGH THE TESTIMONY OF OFFICER CHERYL BROWN AS THE STATEMENTS DID NOT MEET THE ADMISSIBILITY REQUIREMENTS OF EVIDENCE RULE 804.
 II. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AND COMPULSORY DUE PROCESS BY TRIAL COUNSEL'S ACTS AND OMISSIONS BEFORE AND DURING THE TRIAL OF THIS CASE IN VIOLATION OF APPELLANT'S RIGHTS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.
In his first assigned error, appellant challenges the ruling of the trial court, which permitted the out-of-court statements of co-defendant Beau Rogers to be admitted against him. Specifically, appellant argues that Rogers' statements fail to meet the requirements for admissibility pursuant to Evid.R. 804(B), because they were not incriminating as to Rogers and there were no corroborating circumstances to indicate the trustworthiness of Rogers' statements. The state counters that the trial court is permitted the admission of the statements pursuant to Evid.R. 804(B)(3) consistent with the authority of State v. Gilliam (1994),70 Ohio St.3d 17 and, as such, did not violate the Confrontation Clause.
Evid.R. 804(B)(3) provides in pertinent part:
 (B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 * * * (3) Statement against interest. A statement that * * * at the time of its making * * * so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
Under the rule of Ohio v. Roberts (1980), 448 U.S. 56, the veracity of hearsay statements is sufficiently dependable to satisfy the confrontation clause of the federal constitution'sSixth Amendment in allowing the untested admission of such statements against an accused when the evidence (1) falls within a firmly rooted hearsay exception, or (2) contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statements' reliability. Thus, to be admissible, Rogers' statements must meet one of the prongs of the test set forth in Roberts.
In this case, the trial court allowed the statements made by co-defendant to be admitted through the testimony of Officer Brown in reliance on State v. Gilliam, supra, which held that the reliability standard can be satisfied without more in a case where the evidence falls within a firmly rooted hearsay exception and then determined that a statement against interest was a firmly rooted hearsay exception. However, subsequent to the trial court's determination in the within matter, the United States Supreme Court in Lilly v. Virginia (1999), 527 U.S. 119 S.Ct. 1887,144 L.Ed.2d 117, considered the use of statements against penal interest to incriminate a criminal co-defendant when offered by the prosecution in the absence of the declarant and the Supreme Court held that such statements do not categorically satisfy Confrontation Clause concerns.
Then, in reliance on the U.S. Supreme Court's decision in Lilly, supra, our Ohio Supreme court in State v. Madrigal (2000),87 Ohio St.3d 378, recently held an accomplice's confession that inculpates a criminal defendant is not within a firmly rooted exception to the hearsay rule as that concept has been defined by Confrontation Clause jurisprudence. (Lilly v. Virginia [1999],527 U.S. 119, S.Ct. 1887, 1898-1899, 144 L.Ed.2d 117, 132-133, followed; State v. Gilliam [1994], 70 Ohio St.3d 17,635 N.E.2d 1242, to the extent inconsistent herewith, overruled.) Id. at paragraph two of the syllabus.
Thus, co-defendant Beau Rogers' hearsay statements would be admissible at appellant's trial only if they exhibit a guarantee of trustworthiness or indicia of reliability. See Ohio v. Roberts, supra.
Our review of Officer Cheryl Brown's testimony, which incorporates the hearsay statements made by the accomplice Beau Rogers, demonstrates that these hearsay statements simply minimize Rogers' involvement in the crime and attempt to place blame for the crime on appellant. Therefore, it cannot be said that his truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility. Id. at 820. Therefore, we find that Beau Rogers' statements made to Officer Brown fail to meet either prong of the test as set forth in Ohio v. Roberts and, thus, their admission at trial violated appellant's Confrontation Clause rights.
Next, we must determine whether this Sixth Amendment error was prejudicial or harmless. The test to be utilized is found in Chapman v. California (1967) 386 U.S. 18, which held that before a federal constitutional error can be held harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Id. at 23. Further, in Harrington v. California (1974), 395 U.S. 258, the United States Supreme Court held that where the evidence supplied in violation of a constitutional right was merely cumulative and the other evidence was overwhelming, the reviewing court could conclude beyond a reasonable doubt that the denial of the accused's constitutional rights was harmless error.
Applying the foregoing standards to the record before us, we find that the error in permitting Officer Brown to testify as to the statements made by appellant's co-defendant, Beau Rogers, was harmless beyond a reasonable doubt. The evidence in the record clearly and unequivocally reveals that the victim of the shooting had a familiarity with his attacker prior to the night of the shooting, he spent time talking with his attacker before being shot, he was able to describe his attacker and the clothing his attacker was wearing, he was able to identify his attacker as an associate of Beau Rogers and he was able to positively identify appellant as his attacker in open court. An eyewitness to the confrontation between the victim and his attacker was able to corroborate the victim's description of the attacker's clothing and appearance. The state presented the testimony of another witness who knew appellant and was able to verify that the clothing which appellant wore at 9:30 p.m. on the night of the shooting was consistent with the description of clothing as related by both the victim and the eyewitness. Appellant, himself, conceded that the victim had seen him on a number of previous occasions and was familiar with him. Thus, the overwhelming nature of the eyewitness testimony against appellant would easily establish that he was guilty as charged. State v. Simko (1994), 71 Ohio St.3d 483, 491. As such, we find that upon a careful review of the evidence before us, disregarding the testimony admitted in error, the state presented compelling evidence of appellant's guilt and we can conclude beyond a reasonable doubt that the denial of appellant's constitutional rights was harmless error. Appellant's first assignment of error is without merit.
In his second assignment of error, appellant complains that he was denied effective assistance of counsel and compulsory due process due to his trial counsel's acts and omissions during trial. Specifically, appellant argues that counsel's failure to subpoena appropriate witnesses for the defense and counsel's failure to object to hearsay testimony regarding the identity of the assailant prejudiced his defense.
In Ohio a properly licensed attorney is presumed competent. State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965),2 Ohio St. 299, 301. Thus, to obtain reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. Strickland v. Washington(1984) 466 U.S. 668; accord State v. Bradley (1989),42 Ohio St.3d 136. A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. Strickland, supra at 697. Moreover, we recognize that this court must assess the reasonableness of the attorney[']s decisions at the time they are made, not at the time of our assessment. State v. Phillips (1995), 74 Ohio St.3d 72, citing State v. Wilkins (1980), 64 Ohio St.2d 382, 390.
First, appellant complains that trial counsel failed to call a witness. The decision to call witnesses is a matter of trial strategy and those decisions are accorded deference. State v. Coulter (1992), 75 Ohio App.3d 219; State v. Hunt (1984),20 Ohio App.3d 310; State v. Smith (1996), 115 Ohio App.3d 419, 426. Generally, counsel's decisions and trial strategy in this regard will not constitute ineffective assistance of counsel. Id. at 426. Further, appellant has failed to demonstrate that the testimony of this witness would have been of significant assistance to the defense and has not established that there is a reasonable probability that the outcome of the trial would have been different if counsel would have called the witness on his behalf. Accordingly, we find that appellant has failed to demonstrate that he received ineffective assistance of his counsel in this regard.
Next, we consider appellant's contention that counsel was ineffective for failing to object to hearsay testimony. Appellant complains, without identifying the specific instances in the record, that each and every police officer that testified for the state of Ohio (Officers Thomas, Brown and Kiefer) offered hearsay testimony regarding the identity of the assailant to which counsel failed to appropriately and adequately object.
We note, however, that counsel's failure to object to error alone is not enough to sustain a claim of ineffective assistance of counsel. State v. Fears (1999) 86 Ohio St.3d 329, citing State v. Holloway (1988), 38 Ohio St.3d 239. Such trial strategy, even if questionable, does not compel a finding of ineffective assistance of counsel. State v. Smith (2000), 87 Ohio St.3d 424, citing State v. Clayton (1980), 62 Ohio St.2d 45, 49.
First, we note that prior to commencement of trial, appellant's counsel specifically objected to the testimony as proffered by Officer Brown in which she related the statements of Beau Rogers. Further, the record is clear that appellant's counsel argued against the admission of both the oral and written hearsay statements made to police by Beau Rogers. Finally, the record demonstrates that counsel objected to the trial court's ruling which allowed the oral hearsay statements made by Beau Rogers to the police to be admitted pursuant to Evid.R. 804(B)(3) and State v. Gilliam, supra. Accordingly, we do not find, nor has appellant drawn our attention to, any claimed impermissible hearsay testimony offered by Officers Brown, Thomas or Kiefer to which he claims his counsel failed to object. See App.R. 16 (D). This court is not required to search the record for evidence to support an assignment of error. State v. Watson (1998), 126 Ohio App.3d 316. Therefore, we find appellant's second assignment of error to be without merit.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE
SPELLACY, J. and ROCCO, J., CONCUR.